729 So.2d 813 (1998)
Ya-Sin Alfatir SHABAZZ, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00473 COA.
Court of Appeals of Mississippi.
April 21, 1998.
Rehearing Denied July 21, 1998.
Certiorari Denied October 15, 1998.
*815 Joseph P. Hudson, James Donald Evans, III, Hudson Smith & Evans, Gulfport, for Appellant.
Michael C. Moore, Attorney General, Jean Smith Vaughan, Special Asst. Atty. Gen., for Appellee.
Before BRIDGES, C.J., and COLEMAN and DIAZ, JJ.
BRIDGES, Chief Judge, for the Court:
¶ 1. Shabazz was indicted, tried, and convicted of aggravated assault in the Harrison County Circuit Court. He was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections, with placement in an appropriate mental health program. He presents twelve issues for appellate consideration:
I. THE TRIAL COURT ERRED IN FAILING TO HOLD A COMPETENCY HEARING AS REQUIRED BY THE MISSISSIPPI UNIFORM CIRCUIT AND COUNTY COURT RULES, RULE 9.06.
II. THE TRIAL COURT ERRED IN FAILING TO MAKE REQUIRED SPECIFIC *816 FINDINGS BEFORE ISSUING AN ORDER TO FORCIBLY MEDICATE THE DEFENDANT.
III. IT WAS IMPROPER FOR APPELLANT TO BE FORCIBLY MEDICATED BEYOND THE POINT THAT HE WAS FOUND COMPETENT AND NO LONGER A DANGER TO HIMSELF OR TO OTHERS.
IV. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL EFFECTIVELY WAIVED A HEARING ON THE ISSUE OF APPELLANT'S MENTAL COMPETENCY IN VIOLATION OF RULE 9.06 OF THE MISSISSIPPI UNIFORM RULES OF CIRCUIT AND COUNTY COURT.
V. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL ACQUIESCED ON THE ISSUE OF APPELLANT'S COMPETENCY TO STAND TRIAL AND TO BE SENTENCED BY RELYING ON THE STATE'S EXPERTS' OPINIONS.
VI. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S REQUESTS FOR A SENTENCING AND RE-SENTENCING HEARING.
VII. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE CERTAIN EXHIBITS WHEN SUCH ITEMS HAD NOT BEEN PROPERLY AUTHENTICATED AND A PROPER CHAIN OF CUSTODY HAD NOT BEEN ESTABLISHED BY THE STATE.
VIII. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE AN INFLAMMATORY AND PREJUDICIAL PHOTOGRAPH OF THE VICTIM WHICH UNFAIRLY PREJUDICED THE JURY.
IX. THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION S-1M.
X. THE TRIAL COURT ERRED IN WITHDRAWING JURY INSTRUCTION C50 AND ALTERNATIVELY GRANTING JURY INSTRUCTION S-5.
XI. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR A LESSER-INCLUDED-OFFENSE INSTRUCTION.
XII. WHETHER APPELLANT'S TWENTY YEAR SENTENCE IS HARSH UNDER THE CIRCUMSTANCES OF THIS CASE SUCH THAT THE PENALTY VIOLATES THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 3, SECTION 28 OF THE MISSISSIPPI CONSTITUTION.
¶ 2. Finding no error, we affirm the conviction of aggravated assault and sentence of twenty years in the custody of the MDOC.

FACTS
¶ 3. Shabazz was a life-long resident of the coast, and during summer vacations from Yale University, he returned home and worked for the local Sun-Herald newspaper. After college, Shabazz worked for a newspaper in Miami. At some point, Shabazz returned to the coast, but did not work at the newspaper. One of his fellow employees while he was at the Sun-Herald was Riva Brown. Shabazz and Brown were both Knight-Ridder scholarship recipients, and also worked on community projects together. The two were friends, but were never involved romantically.
¶ 4. On the evening of July 18, 1994, at approximately 6:30 P.M., Brown, a full time employee of the Sun-Herald, left the office and headed across the parking lot to her car. She saw Shabazz sitting in a car in the parking lot. Brown approached Shabazz's car in an effort to speak, but whenever Brown got close to the car Shabazz would pull away. Brown finally gave up and went to her own car to go home. Brown got in her car and was about to back out when she realized that Shabazz had pulled up behind her and blocked her in. She then saw Shabazz rushing hurriedly towards her car holding something down in his hand. Brown testified that the next thing she knew, her drivers' side window blew out. She felt something hit her arm, and experienced sharp pain in her left arm and lower abdomen. At that point, Brown looked up to see *817 Shabazz pointing a shotgun at her head. The gun clicked again, but did not go off. She did not see any other person with Shabazz. Brown immediately crawled to the passenger's side of the car, got out, and ran back to the office to get help. Brown received severe injuries to her left arm (she is left-handed) and her abdomen. She had fourteen holes in her intestines, and has had a total of four reconstructive surgeries on her arm and abdomen. As a result of the shotgun blast, Brown's body is and will remain full of lead pellets.
¶ 5. Michael Tonos, executive editor of the Sun-Herald, testified that he saw Brown walking to her car on the evening of the shooting. As he noticed that her car was blocked in, he saw Shabazz get out of the car with a shotgun in his hand, walk to Brown's car, hold it up to Brown's window, and fire. Tonos did not see anyone besides Brown and Shabazz in the parking lot near her car.
¶ 6. Shabazz testified of his own version of events. According to Shabazz, he met a guy named Noray at a fast food restaurant, and elicited his help in shooting Brown's car. Shabazz got the shotgun, the shells, and a rental car and asked Noray to shoot Brown's car. However, Shabazz testified that he never asked Noray to actually shoot Brown or harm her. According to Shabazz, he drove Noray to the parking lot of the Sun-Herald and had him sit low down in the passenger seat so no one would see him. After pulling in behind Brown, Noray got out of the car, gun in hand, and proceeded to shoot Brown. Noray then ran back and put the gun in the car and then took off on foot and has not been seen or heard from since. Shabazz panicked and drove off. He was later arrested after being pulled over at a service station. Shabazz stated that he wore white gloves during the incident, but took them off as he drove away. Noray was shorter than Shabazz, weighed less then Shabazz, was much darker skinned than Shabazz, but still Shabazz testified that the victim and eyewitness were wrong when they identified Shabazz as the shooter.
¶ 7. When Shabazz was arrested, police recovered from the car the shotgun, shells and a pair of white gloves. Shabazz was subsequently jailed, and at the request of his attorneys, was sent to the State Hospital at Whitfield for psychiatric examination and necessary medication. After being found competent to stand trial, Shabazz was tried and convicted by a jury after a one day trial.

ANALYSIS

I. THE TRIAL COURT ERRED IN FAILING TO HOLD A COMPETENCY HEARING AS REQUIRED BY THE MISSISSIPPI UNIFORM CIRCUIT AND COUNTY COURT RULES, RULE 9.06.
¶ 8. Shabazz complains that the trial court erred in not holding a competency hearing before proceeding to trial. However, Shabazz's attorneys at the time, the same attorneys representing him on this appeal, petitioned the court on August 5, 1994, to place Shabazz in the state hospital for evaluation. The trial court granted the petition and ordered that Shabazz be evaluated to determine whether he had a factual and rational understanding of the proceedings against him, as well as the ability to reasonably assist his attorney in his defense and to evaluate his state of mind at the time of the alleged offense. In its order, the trial court also stated that Shabazz receive any and all necessary treatments and procedures. The trial court noted in its order that Shabazz's attorneys consented to such treatment on behalf of Shabazz in accordance with Rule 4.08 of the Mississippi Uniform Rules of Circuit Court Practice.
¶ 9. Subsequently, Shabazz petitioned the court for an order setting a date for a competency hearing. A competency hearing was held on March 2, 1995. Several experts testified at the hearing: Drs. Reb McMichael, Deborah Giorgi-Guarnieri and Henry Maggio. Dr. McMichael, a psychiatrist practicing at the State Hospital at Whitfield, testified that he had had approximately twelve to fifteen formal interviews with Shabazz as well as informal contact while on rounds. Additionally, he and the other doctors conducted another interview the morning of the hearing. It was Dr. McMichael's opinion that Shabazz was mentally ill and in need of *818 further in-patient evaluation and treatment to determine Shabazz's fitness to be tried. Additionally, Shabazz needed treatment with anti-psychotic drugs for a complete evaluation. Dr. McMichael testified that such evaluation and treatment was medically necessary and appropriate.
¶ 10. Dr. Giorgi-Guarnieri, a psychiatrist and professor at Tulane University, examined Shabazz at the request of the defense. She testified that she was in complete agreement with Dr. McMichael's opinion. Additionally, Dr. Maggio, a psychiatrist in private practice, testified that he was in complete agreement with both Dr. McMichael and Dr. Giorgi-Guarnieri. After the testimony of the three experts, the State rested and counsel for Shabazz deferred to the recommendations of the doctors that Shabazz needed further evaluation and medication. The trial court then found that Shabazz was mentally ill and in need of further evaluation and treatment, including any medical treatment.
¶ 11. Three months later, attorneys Hudson and Evans withdrew as counsel and the court appointed attorney Holt Montgomery. In November 1995, Shabazz filed a notice of intent to use the insanity defense. An insanity defense was entered and was not withdrawn until February 5, 1996, the day before the trial was set to begin. A hearing was held at which the trial court and attorneys for each party discussed the final opinions submitted by the psychiatric experts on the issue of Shabazz's competency to stand trial. Attorney Montgomery made it exceedingly clear that he had counseled his client not to give up the insanity defense, but Shabazz had insisted on withdrawing it. Drs. McMichael and Maggio had submitted reports to the trial court stating their opinions on Shabazz's competency to stand trial. The trial court sua sponte made the following reports exhibits to the hearing: report of Dr. Henry Maggio, dated January 31, 1996; report of Dr. Reb McMichael, dated October 25, 1995; and report of psychologist Chris Lott, dated October 25, 1995. The trial court asked both parties whether they wanted any other reports attached as exhibits, and Montgomery replied that those would be sufficient. The trial court then found that based upon the reports of the psychiatric experts, Shabazz was competent to assist counsel and stand trial, and was sane at the time of the alleged incident.
¶ 12. Shabazz was asked whether he agreed with his attorney's statements and truly desired withdrawing his insanity defense. Shabazz replied that he did desire withdrawing the insanity defense, that he had no questions, and that he understood that his case would proceed to trial the next day. Shabazz then told the trial court that he wanted to file a motion for denial of a speedy trial. The trial court told Shabazz that he could discuss that motion with his attorney. Montgomery stated that while he already had two experts to testify in support of the insanity defense, he nonetheless admitted that the expert opinions of Drs. McMichael and Maggio finding Shabazz competent to stand trial supported Shabazz's decision to withdraw the insanity defense. Montgomery admitted that everyone agreed that Shabazz was competent to confer with his attorney.
¶ 13. On appeal, Shabazz claims that he was denied a competency hearing and that such error requires reversal. However, while Shabazz claims a violation of his rights under Rule 9.06 of the Mississippi Uniform Circuit and County Court Rules, he does not claim that he was not competent to stand trial. After reviewing the record and the exhibits, we are not persuaded that Shabazz was denied a competency hearing, but instead feel that the trial court did everything in its power to safeguard Shabazz's rights and well-being.
Rule 9.06 states:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist....
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the *819 defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital....
The defendant's attorney, as the defendant's representative, shall not waive any hearing authorized by this rule, but is authorized to consent, on behalf of the defendant, to necessary surgical or medical treatment and procedures.
If at any time during such commitment, the court decides, after a hearing, that the defendant is competent to stand trial, it shall enter its order so finding and declaring the defendant competent to stand trial, after which the court shall proceed to trial.
¶ 14. In Shabazz's case, his attorneys petitioned for and were granted an evaluation of Shabazz. After the evaluation, the court held a full-blown competency hearing in accordance with Rule 9.06. Three fully qualified experts who had interviewed and evaluated Shabazz testified that he was incompetent to stand trial. Shabazz's attorneys deferred to the experts' opinions and consented to any necessary treatment and medication. As the case proceeded toward trial, Shabazz led everyone to believe that he would be presenting an insanity defense. However, the day before trial, Shabazz withdrew that defense. The trial court then correctly addressed the issue of Shabazz's competency to stand trial. While the experts were not present at the hearing, the trial court had all the most recent reports from Drs. Maggio and McMichael. It was the opinion of those doctors that Shabazz was competent to stand trial and that he was sane at the time of the alleged incident. The court also talked to and observed Shabazz at the hearing. The trial court gave Shabazz's counsel the opportunity to submit his own reports into the record, but he declined. After reviewing the reports of the experts and observing Shabazz, the trial court found that Shabazz was competent to stand trial, and that trial would commence the next day.
¶ 15. In Conner v. State, 632 So.2d 1239, 1248 (Miss.1993), the Mississippi Supreme Court addressed the issue of the trial court's responsibility to hold a competency hearing. If reasonable grounds exist to believe that the defendant may be insane, the trial court must hold a competency hearing. Id. "The determination of what is `reasonable,' of course, rests largely within the discretion of the trial judge. He sees the evidence first hand; he observes the demeanor and behavior of the defendant." Id. Conner did not have a competency hearing, and the supreme court was not persuaded on appeal that the trial court committed error in failing to have such a hearing. Id. at 1251. Shabazz, on the other hand, had two hearings to determine his competency to stand trial. The first hearing was held in March 1995. The second hearing, while not formally labeled a competency hearing, nonetheless explored and investigated Shabazz's competency to stand trial. In Howard v. State, 701 So.2d 274, 280 (Miss.1997), the supreme court reiterated that "the trial judge has an ongoing responsibility to prevent the trial of an accused unable to assist in his own defense." The court in Howard also reminded readers that in Conner it ruled "that the trial court did not err in failing to order a competency hearing sua sponte, as the trial judge had the benefit of the psychiatrist's report as well as the benefit of observing the defendant's demeanor...." Id. at 281. The record is clear in the instant case that Shabazz was afforded a formal competency hearing in March 1995, as well as a hearing on his competency the day before his trial in February 1996. The judge made certain that Shabazz was competent to stand trial, and we have not been made aware of any prejudice suffered by Shabazz in this regard. This issue is meritless.

II. THE TRIAL COURT ERRED IN FAILING TO MAKE REQUIRED SPECIFIC FINDINGS BEFORE ISSUING AN ORDER TO FORCIBLY MEDICATE THE DEFENDANT.
¶ 16. Shabazz claims that he was denied due process when the trial court ordered that he be forcibly medicated without making specific findings that there was an essential state interest and no other less intrusive means. Shabazz bases his claim on the United State's Supreme Court's decision in Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. *820 1810, 118 L.Ed.2d 479 (1992) which has been interpreted on only one occasion by the Mississippi Supreme Court in Harrison v. State, 635 So.2d 894 (Miss.1994). Riggins was medicated before his trial for robbery and murder after he complained of hearing voices and being unable to sleep. Riggins, 504 U.S. at 127, 112 S.Ct. 1810. However, after he was found competent to stand trial, Riggins moved for the medication to be suspended during trial because the medication would affect his demeanor, and he wanted the jury to see his true mental state since he was using an insanity defense. Id. A hearing was held on the motion, and the trial court denied the request in a one page order. Id. In its one page order, the trial court failed to indicate in any way its rationale behind continuing the forced medication. Id. The Supreme Court held that once Riggins's motion to suspend the treatment was denied, then the administration of the drug became involuntary. Id. at 133, 112 S.Ct. 1810. The burden then shifted to the State to show the necessity for the drug Mellaril and its medical appropriateness. Id. at 135, 112 S.Ct. 1810. Because the State failed to make such proof and the trial court failed to make any specific findings about an overriding state interest or any consideration of less intrusive means, the United State's Supreme Court reversed Riggins's conviction and remanded for a new trial. Id. at 138, 112 S.Ct. 1810.
¶ 17. In Harrison v. State, 635 So.2d 894, 902-03 (Miss.1994), the Mississippi Supreme Court was faced with an appeal in which Harrison claimed that the trial court erred when it granted the State's motion to administer to the defendant injections of Haldol. The trial court held a hearing on the issue at which the State presented witnesses that testified to Harrison's need for the injections. Id. at 903. Harrison cross-examined the State's witnesses, but presented no witnesses in opposition. Id. The trial court authorized continued injections. Id. In Harrison, as in Riggins, the defendant objected to the involuntary, forcible medication. The Mississippi Supreme Court recognized the reasoning behind the Riggins case and held:
Specifically, we hold that involuntary treatment of the criminally accused with anti-psychotic medication is permissible only where medically appropriate and, considering less intrusive alternatives, essential for safeguarding a compelling state interest.
Harrison, 635 So.2d at 905-06. However, the supreme court held that "although Harrison was medicated without the requisite findings, any potential prejudice was eliminated when he withdrew his insanity defense." Id. at 906.
¶ 18. Shabazz's case is different from both Riggins and Harrison. At Shabazz's competency hearing, Dr. Reb McMichael testified that Shabazz was mentally ill and needed further evaluation as well as treatment with anti-psychotic drugs, even against his will if necessary. In response to questioning, McMichael replied that medication was necessary and that it was medically appropriate. The two other medical experts agreed with Dr. McMichael. Shabazz did not question any of the witnesses, nor did he present any witnesses of his own to protest any medication. In fact, Shabazz's counsel deferred to the recommendations of the experts that Shabazz needed further evaluation and medication. The trial court found that Shabazz's further evaluation and possible medication was medically necessary and appropriate based on the opinions of the three experts.
¶ 19. Unlike the defendants in Riggins and Harrison, Shabazz never objected to being medicated. Three experts agreed that medication was necessary to aid in Shabazz's evaluation. His attorneys agreed and deferred to the experts' opinions. Under Rule 9.06, an attorney may accept medication on behalf of his client. Because Shabazz never objected, the State was never compelled to prove that there was an overriding state interest. Nonetheless, the trial court found that any such medication was medically necessary and appropriate. We are unconvinced that the trial court erred in any way in holding that Shabazz could be medicated during the evaluation process. Shabazz, by and through his attorneys, agreed to the medication, and the trial court based its findings on the expert testimony of three qualified psychiatrists. This issue has no merit.

III. IT WAS IMPROPER FOR APPELLANT TO BE FORCIBLY MEDICATED *821 BEYOND THE POINT THAT HE WAS FOUND COMPETENT AND NO LONGER A DANGER TO HIMSELF OR TO OTHERS.
¶ 20. For this issue, Shabazz does no more than re-word his previous argument against forcible medication. He adds nothing new to persuade us that anything improper or erroneous took place in the trial court regarding his medication while being evaluated. Again, he fails to show us that at any time he objected to any medication. The first mention of any objection to medication came in Shabazz's amended motion for JNOV or, in the alternative, new trial. The record itself is unclear about when Shabazz was medicated, but it is obvious that no objection was ever made, and therefore, the trial court cannot be found in error for a decision it never had the opportunity to make. Livingston v. State, 525 So.2d 1300, 1303 (Miss. 1988). The record is clear that Shabazz's counsel deferred to the experts' opinions that medication was necessary to complete an evaluation. Again, this issue is without merit.
IV. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL EFFECTIVELY WAIVED A HEARING ON THE ISSUE OF APPELLANT'S MENTAL COMPETENCY IN VIOLATION OF RULE 9.06 OF THE MISSISSIPPI UNIFORM RULES OF CIRCUIT AND COUNTY COURT.
V. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL ACQUIESCED ON THE ISSUE OF APPELLANT'S COMPETENCY TO STAND TRIAL AND TO BE SENTENCED BY RELYING ON THE STATE'S EXPERTS'S OPINIONS WITHOUT THE BENEFIT OF AN OPINION BY DEFENDANT'S OWN EXPERT.
¶ 21. Again, Shabazz complains about being denied a competency hearing. This time, instead of blaming the trial court, he blames his trial counsel. Additionally, while he does not complain about his current counsel acquiescing to the experts' opinions on the issue of medication, he does complain about the trial counsel that acquiesced to the experts' opinions on his competency. (Shabazz's current attorneys represented him until a few months before trial. New counsel took over for trial, and then his current attorneys returned to work on the appeal.)
¶ 22. Shabazz first complains that he received ineffective assistance of counsel when his trial counsel effectively waived a competency hearing. The Mississippi Supreme Court adopted the Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard for evaluating ineffective assistance of counsel claims. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). A defendant has to show that his attorney's performance was deficient and that the deficiency was so substantial as to deprive the defendant of a fair trial. Id. We require that the defendant prove both elements. Brown v. State, 626 So.2d 114, 115 (Miss.1993); Wilcher v. State, 479 So.2d 710, 713 (Miss.1985). In any case presenting an ineffective assistance of counsel claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Foster v. State, 687 So.2d 1124, 1129 (Miss.1996). This is measured by a totality of the circumstances, and thus, the Court must look at counsel's overall performance. Taylor v. State, 682 So.2d 359, 363 (Miss.1996). There is no constitutional right to errorless counsel. Foster, 687 So.2d at 1130. "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
[T]here is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
Schmitt v. State, 560 So.2d 148, 154 (Miss. 1990) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
*822 ¶ 23. We have already addressed Shabazz's claim that he was denied a competency hearing before trial and found that the pretrial hearing the day before the trial was sufficient to determine his competency to stand trial. It was at that hearing that Shabazz insisted that his insanity defense be withdrawn. His counsel argued very strongly against withdrawing the insanity defense. In fact, Shabazz's counsel went to great lengths to explain to the trial court the thorough investigatory job he did to find a way to keep the insanity defense for his client. However, it was Shabazz's decision to make, and he did so against the express advice of his attorney. We fail to see how Shabazz's counsel was deficient, or how the result of his trial would have been different. Shabazz was afforded not one, but two competency hearings, and his counsel's performance was in no way deficient.
¶ 24. Additionally, Shabazz faults his counsel for failing to present his own expert's opinion. However, the cases cited by Shabazz deal with instances in which the State has denied a defendant access to a competent psychiatrist to conduct an evaluation. That is not the situation in the instant case. Shabazz was never denied access to an expert. Instead, his counsel chose not to present her testimony in light of Shabazz's insistence on withdrawing the insanity defense. His expert, who had examined and evaluated Shabazz, was Dr. Deborah Giorgi-Guarnieri. Counsel explained at the hearing that he had planned on calling Dr. Giorgi-Guarnieri and another expert to testify at trial if Shabazz had stuck with his insanity defense. However, Shabazz insisted that he was competent, and the State's experts all concluded that he was competent to confer with his attorney and stand trial. In matters of strategy, "[a]ttorneys are permitted wide latitude...." Hiter v. State, 660 So.2d 961, 965 (Miss.1995). Shabazz's counsel's hands were tied because of his client's insistence on withdrawing the insanity defense and proceeding as a competent defendant. Counsel for Shabazz admitted that the State's experts agreed that Shabazz was competent, but we are unconvinced that such agreement on the part of Shabazz's counsel was error amounting to ineffective assistance. After reviewing the entire record and in light of the total circumstances, we fail to see any instance where Shabazz's counsel was anything but a zealous advocate on his client's behalf. Shabazz has failed to prove any error or that any error was so prejudicial as to deprive him of a fair trial. This issue has no merit.

VI. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S REQUESTS FOR A SENTENCING AND RE-SENTENCING HEARING.
¶ 25. Shabazz was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Twenty years is the maximum sentence allowable under the statute. It was in the trial court's discretion whether to grant a sentencing hearing and/or a re-sentencing hearing. Shabazz was already sentenced before he asked for a sentencing hearing or a sentencing report, so he asked for a resentencing hearing in light of his mental illness. In failing to ask for a separate sentencing hearing before he was sentenced, Shabazz has waived the issue for appeal. "[D]efendant's failure at the time of sentencing to request a separate hearing would preclude his now raising the point, even if it had substantive merit." Wallace v. State, 607 So.2d 1184, 1190 (Miss.1992). Moreover, it was in the trial court's discretion whether to grant a re-sentencing hearing. Id. at 1191. The trial court was certainly familiar with Shabazz's history and knew of any mitigating factors. Ultimately, the trial court ordered that Shabazz be placed in a mental health program while serving his sentence. Shabazz has failed to show any error, and this issue is meritless.

VII. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE CERTAIN EXHIBITS WHEN SUCH ITEMS HAD NOT BEEN PROPERLY AUTHENTICATED AND A PROPER CHAIN OF CUSTODY HAD NOT BEEN ESTABLISHED BY THE STATE.
¶ 26. Shabazz complains that certain items entered into evidence, including the shotgun shells, and gloves worn by Shabazz, were improperly authenticated, and a chain *823 of custody never established. At trial, Shabazz objected to the admission of the shotgun, shells, and white gloves, all of which were taken from his car when he was arrested. The victim testified that Shabazz wore white gloves as he shot her with a shotgun. After the arresting officers took the items from Shabazz's car, they were turned over to the investigator, who turned them over to the evidence technician. In response to Shabazz's objection, the trial court ruled that the evidence had been properly sealed and marked, and overruled the objection.
¶ 27. "The test for chain of custody is to ascertain whether there is any evidence of tampering or substitution of evidence." Wells v. State, 604 So.2d 271, 277 (Miss.1992). Neither in the trial court nor on appeal does Shabazz make any argument that the evidence was ever mishandled, substituted, or tampered with. "Decisions on the chain of custody are `largely left to the discretion of the trial court.'" Id. (citation omitted). While Shabazz criticizes the trial court for admitting the evidence, he fails to show how the trial court in any way abused its discretion. This issue has no merit.

VIII. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE AN INFLAMMATORY AND PREJUDICIAL PHOTOGRAPH OF THE VICTIM WHICH UNFAIRLY PREJUDICED THE JURY.
¶ 28. Again, Shabazz attacks the trial court's discretion in admitting evidence. This time, the trial court admitted a photograph of the victim over Shabazz's objection. "[T]he admission or exclusion of evidence, photographs in particular, is within the sound discretion of the trial court and that decision will be upheld unless there is an abuse of discretion." Walker v. Graham, 582 So.2d 431, 432 (Miss.1991). The photograph in the instant case was admitted to show the severity of the wound and the close range at which it was inflicted. The Mississippi Supreme Court has stated that the fact that a photograph "might arouse the emotions of the jurors, does not of itself render it incompetent evidence as long as its introduction serves some useful evidentiary purpose." Kniep v. State, 525 So.2d 385, 388 (Miss. 1988). Again, Shabazz has failed to convince us that the trial court abused its discretion in admitting the photograph of the victim.

IX. THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION S-1M.
¶ 29. The State originally offered instruction S-1, to which the defense objected. The trial court then had the State modify its instruction, and the result is the following, S-1M:
The Court instructs the jury that the Defendant, YA-SIN ALFATIR SHABAZZ, has been charged by an Indictment with the criminal offense of Aggravated Assault.
If you find from the evidence in this case beyond a reasonable doubt that:
(1) on or about July 18, 1994, in the First Judicial District of Harrison County, Mississippi,
(2) the Defendant, YA-SIN ALFATIR SHABAZZ while acting alone or in concert with another, did unlawfully, feloniously, wilfully and purposely caused bodily injury to Riva Renee Brown,
(3) by shooting her with a deadly weapon, to-wit: a shotgun; and
(4) YA-SIN ALFATIR SHABAZZ, or the other person was not acting in necessary self-defense,
then you shall find the Defendant Guilty of Aggravated Assault.
If the Prosecution has failed to prove any one or more of the above listed elements, then you shall find the Defendant Not Guilty.
¶ 30. Shabazz objected to S-1M on the grounds that the instruction did not properly recreate the elements of the offense of aggravated assault, and that the instruction charged him in some sort of conspiracy theory that was outside the scope of the indictment. The trial court noted Shabazz's objection, but overruled it nonetheless. On appeal, Shabazz claims that the instruction was error because he could not be found guilty by association with Noray unless Shabazz had knowledge that Riva Brown would be shot. However, Shabazz admitted *824 at trial that he rented the car, obtained the shotgun, shells, and white gloves, solicited Noray's assistance, and drove himself and Noray to the parking lot where Riva Brown was shot. Shabazz argues that since he only thought Noray was going to shoot Brown's car, he cannot be held accountable for Noray's shooting Brown. We are unconvinced by this argument. Shabazz orchestrated every bit of the shooting, and according to his testimony, watched Noray approach Brown's car once Brown was seated inside the car. It is unimaginable that anyone could shoot the car on the driver's side at close range with a shotgun and not seriously injure the driver.
¶ 31. In Mississippi, "any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an aider and abettor and is equally guilty with the principal offender." Swinford v. State, 653 So.2d 912, 915 (Miss.1995). Jury instructions may not be given unless there is some evidentiary basis in the record with which to support them. Perry v. State, 637 So.2d 871, 877 (Miss.1994). According to the victim and another eyewitness, Shabazz was alone and pulled the trigger, severely injuring Brown. Shabazz, on the other hand, testified that while he planned the whole incident, he only meant for Noray to shoot the car. Either way, the court did not err in granting instruction S-1M and the language contained therein that Shabazz, acting alone or in concert, committed aggravated assault on Riva Brown. This issue has no merit.

X. THE TRIAL COURT ERRED IN WITHDRAWING JURY INSTRUCTION C-50 AND ALTERNATIVELY GRANTING JURY INSTRUCTION S-5.
¶ 32. When the trial court offered instruction C-50, Shabazz objected. The trial court then substituted the State's instruction S-5 in place of C-50. Instruction S-5 reads as follows:
The Court instructs the jury that each person present at the time and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hands committed the whole offense.
¶ 33. Shabazz's objection to S-5 was that it was outside the scope of the indictment and highly improper. The trial court overruled Shabazz's objection and held that the instruction was proper. Now on appeal, Shabazz argues that the trial court erred in withdrawing instruction C-50. However, Shabazz objected to C-50 at trial. He cannot now come back and complain of something that he made happen. "It is elementary that different grounds than the objections presented to the trial court cannot be presented for the first time on appeal." Thornhill v. State, 561 So.2d 1025, 1029 (Miss. 1989). Moreover, Shabazz has failed to persuade us that S-5 is improper. "Aiding and abetting may be manifested by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even being present, with the intention of giving assistance...." Swinford, 653 So.2d at 915. According to Shabazz's own testimony, he did everything but pull the trigger. According to the victim and eyewitness, Shabazz did everything including pulling the trigger. We find no error in granting instruction S-5.

XI. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR A LESSER-INCLUDED-OFFENSE INSTRUCTION.
¶ 34. Shabazz claims that because according to his testimony, he did not pull the trigger and did not intend for Brown to be shot, that he therefore should have received a lesser-included-offense instruction on simple assault. We do not agree, nor does case law support Shabazz's contention. Evidence presented at trial from the victim and an eyewitness showed that Shabazz used a shotgun, a deadly weapon, to inflict severe bodily injury on Brown which could have caused her death. Even under Shabazz's version of events, he was responsible for causing Brown's injury, whether he pulled the trigger or Noray did. The Mississippi Supreme Court has stated that a lesser-included-offense instruction may be granted where there is an evidentiary basis for such. *825 Hutchinson v. State, 594 So.2d 17, 18 (Miss. 1992). The difference between aggravated assault and simple assault is clear in the statutory language. Aggravated assault is committed with a deadly weapon, meant to cause serious bodily harm or death. Simple assault entails knowingly, recklessly or purposely causing bodily harm to another. Id. at 18-19. "When an accused wields a weapon that is without question deadly and then intentionally strikes his victim, he is not entitled to a lesser included offense instruction for simple assault." Hoops v. State, 681 So.2d 521, 535 (Miss.1996) (citing Hutchinson v. State, 594 So.2d 17, 20 (Miss.1992)). Based on the evidence presented at trial, no fair-minded juror could have found Shabazz guilty of anything less than aggravated assault. This issue has no merit.

XII. WHETHER APPELLANT'S TWENTY YEAR SENTENCE IS HARSH UNDER THE CIRCUMSTANCES OF THIS CASE SUCH THAT THE PENALTY VIOLATES THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 3, SECTION 28 OF THE MISSISSIPPI CONSTITUTION.
¶ 35. On appeal, Shabazz complains that his twenty year sentence for aggravated assault is harsh and amounts to cruel and unusual punishment. We disagree. The Mississippi Supreme Court has held on several occasions that the imposition of sentence is within the trial court's discretion, and "we will not review the sentence so imposed, if it is within the prescribed limits of the statute." May v. State, 435 So.2d 1181, 1184 (Miss. 1983). Shabazz presents no case law to the contrary, nor does he argue that his sentence is outside the limits prescribed by statute. The trial court committed no error in sentencing Shabazz to twenty years in the custody of the MDOC, with treatment in an appropriate mental health program.
¶ 36. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL TAXED TO APPELLANT.
McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
THOMAS, P.J., not participating.