IRVING, P.J., for the Court:
¶ 1. On April 12, 2012, pursuant to a request for modification of alimony, the Desoto County Chancery Court reduced Leslie B. Shumake Jr.’s monthly alimony payments to Katarina Sitton Shumake from $5,750 to $3,250 until Leslie finished with his Chapter 13 bankruptcy plan, at which time the monthly alimony payment would increase to $4,225. Additionally, the chancery court ordered Leslie to pay $58,550 in back alimony and $13,361.50 to his daughter, Rachel, for money that Leslie had withdrawn from the MPACT college fund that he had set up for her. Payments on the alimony arrearage and reimbursement of the MPACT fund were suspended until Leslie completed his bankruptcy plan, at which time he would begin making monthly payments of $1,500 toward the alimony arrearage and $500 as reimbursement of the MPACT fund.
¶ 2. Feeling aggrieved, Leslie appeals and argues that the chancery court: (1) failed to take into account all of his income and expenses in setting the current alimony amount; (2) erred in ordering future alimony; (3) erred in finding that he was in arrears on his alimony payments in the amount of $58,550; (4) erred in ordering him to pay $500 per month to reimburse Rachel for the MPACT fund; and (5) erred in ruling on the case almost one year from the date of the hearing.
¶ 3. We affirm the judgment modifying Leslie’s alimony obligation. However, we find that the court erred in ordering Leslie *902 to pay $58,550 in arrearage, as well as ordering him to reimburse Rachel $13,861.50 for money withdrawn from the MPACT fund. Therefore, we reverse and render that portion of the judgment.
FACTS
¶ 4. In its final judgment of divorce filed on February 20, 2009, the chancery court ordered Leslie to pay Katarina $5,750 per month, or $1,326.93 per week, in periodic alimony.[1] On February 27, 2009, Leslie filed a motion for reconsideration, or, in the alternative, a new trial pursuant to Rule 59 of the Mississippi Rules of Civil Procedure, which the chancery court did not rule on immediately. On March 12, 2009, Katarina filed a complaint for citation for contempt, claiming that Leslie had not been paying the amount of alimony that the court had ordered. Leslie had never paid the amount ordered in the February 20, 2009 judgment of divorce and had been paying only $650 per week, or $2,816.66 per month, since then. Leslie filed an answer and counterclaim for contempt and a complaint for modification in which he claimed that it was impossible for him to pay the amount of alimony ordered by the court. Additionally, he alleged that Katarina had not “complied with the provisions of the court’s findings of fact and conclusions of law.” He also asserted that a material change in circumstances had occurred because he had been “forced” to file for bankruptcy on February 19, 2009, and that there was a need to modify the divorce decree.
¶ 5. On April 8, 2009, the chancery court entered an order denying Leslie’s motion for reconsideration, and on April 14, 2009, Leslie filed a notice of appeal. After a hearing on Katarina’s complaint for citation for contempt and Leslie’s answer and counterclaim for contempt and for modification, the court entered an order on August 24, 2009, pretermitting the issue of reduction in alimony and continuing the matter for review in January 2010. It is noteworthy, however, that the chancery court did not hold Leslie in contempt for paying less alimony than he had been ordered to pay, and implicitly allowed him to continue paying the reduced amount. There is no record of the alimony issue being reviewed in January 2010, as promised by the chancellor. The parties agree that the matter of alimony was next addressed by the chancellor in an order entered November 12, 2010, although that order is not in the record. Despite the absence of the order, the docket reflects that an order was indeed entered on November 12, 2010. During the final hearing held in April 2011, the parties discuss a pertinent portion of the order, wherein the chancellor ordered Leslie to begin paying $750 per week, beginning September 2010. The parties agree that the November 12 order, as well as the August 2009 order, contains a statement or language indicating that the issue regarding alimony was not settled and would be reviewed by the chancellor at a later date.
¶ 6. On March 31, 2011, Katarina filed a second motion for citation for contempt, alleging that Leslie had not provided verification of the life-insurance policy or bank statements required by the judgment of divorce. Leslie filed an answer to the motion, and counterclaimed for contempt. In his answer and counterclaim, he denied Katarina’s allegations and claimed that Katarina had refused to pay bills that she *903 was responsible for pursuant to the decree. A hearing on all motions was held on April 27, 2011, but the chancellor did not issue a final judgment until April 12, 2012, in which he ordered Leslie to pay Katarina $8,250 per month, or $750 per week, in permanent periodic alimony until his Chapter 13 bankruptcy-plan payments were completed. After his bankruptcy payments were completed, Leslie would pay permanent periodic alimony in the amount of $4,225 per month, or $975 per week. The court also found that Leslie was $58,550 in arrears on his alimony and ordered him to pay Katarina $1,500 per month following the completion of his bankruptcy payments. Additionally, the court ordered that, following the completion of his bankruptcy payments, Leslie should pay Rachel $500 per month until the $13,861.50 that Leslie removed from Rachel’s MPACT fund was paid in full.
¶ 7. Additional facts, as necessary, will be related in the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Alimony

¶ 8. “A chancellor’s findings of fact will not be disturbed unless [they are] manifestly wrong or clearly erroneous.” Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009) (quoting Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002)) (internal quotation marks omitted). “[T]he decision of whether to award alimony, and if so, what amount, is left to the chancellor’s discretion.” Dogan v. Dogan, 98 So.3d 1115, 1122 (¶ 11) (Miss.Ct.App. 2012) (citing George v. George, 22 So.3d 424, 427 (¶ 4) (Miss.Ct.App.2009)).
¶ 9. Leslie claims that when the chancellor set the original alimony amount of $5,750, he based the amount on Leslie’s income when Leslie had a thriving real-estate-law practice. Leslie argues that there has been a material change in circumstances and that it is impossible for him to pay that amount of alimony, as he has filed for bankruptcy. Leslie also argues that the reduction granted by the chancellor from $5,750 to $4,225 is still too high, based on his present income. He also argues that the chancellor committed reversible error by ordering that he pay an increased amount of alimony upon completion of his bankruptcy plan “without knowledge of the circumstances of either the Appellant or the Appellee when the Appellant’s bankruptcy plan is finished.” Additionally, he argues that the alimony amount should be further reduced to $350 per week so that he can maintain a reasonable standard of living.
¶ 10. “A chancellor has the authority to modify periodic alimony upon a finding of a substantial change in circumstances[.]” Holcombe v. Holcombe, 813 So.2d 700, 703 (¶ 11) (Miss.2002) (quoting McDonald v. McDonald, 683 So.2d 929, 931 (Miss.1996)) (internal quotation marks omitted). “The change in circumstance must not be anticipated by the parties at the time of the original decree.” Id. (citing Ivison v. Ivison, 762 So.2d 329, 334 (¶ 11) (Miss.2000)). “[S]imply filing for bankruptcy does not rise to the level of a substantial change without a finding by the chancellor that the filing was made in good faith.” Varner v. Varner, 666 So.2d 493, 497 (Miss.1995).
¶ 11. Leslie insists that he is paying a significant amount in bankruptcy payments that he was not having to pay at the time of the divorce. However, he filed for bankruptcy on February 19, 2009, the day before the judgment of divorce was entered. The chancellor noted that Leslie admitted that “all of the liability associated with his ... [bankruptcy [p]lan were *904 debts known at the time of the divorce.” After reviewing Leslie’s bank statements from 2010, his Uniform Chancery Court Rule 8.05 Financial Declaration Form from 2009, and testimony from the parties, the chancellor found that Leslie’s income-generating capacity was substantial and, as stated, ordered that his monthly alimony payment be reduced from $5,750 to $3,250 until Leslie finished with his Chapter 13 bankruptcy plan, at which time the monthly alimony payment would increase to $4,225. We do not see any problem with the increase ordered by the chancellor, to commence upon termination of Leslie’s bankruptcy plan, as the increased amount was based on Leslie’s current disposable income. At that time, Leslie was paying $4,239.50 per month on his Chapter 13 bankruptcy plan. After completion of the bankruptcy plan payments, Leslie would be able to use a portion of the $4,239.50 to cover the $975 monthly increase in his alimony payment. As stated, chancellors are given wide discretion in setting alimony. We cannot say that the chancellor erred in ordering that Leslie’s monthly alimony payment be increased after, what Leslie considers, his greatest financial burden' — his bankruptcy payments — has been lifted. Nor can we say say that the chancellor’s findings were either manifestly wrong or clearly erroneous. Therefore, we find no error in the amount of alimony ordered. This issue is without merit.

II. Arrearage

¶ 12. Next, Leslie claims that the chancellor erred in determining that he was $58,550 in arrears on his alimony payments. He argues that “the sum of $58,550 [in] arrearage could only be arrived at if the court found that [Leslie] should have been paying ... $5,750 per month all along.” He insists that although he was initially ordered to pay $5,750 per month, he should not be held to that order because of two reasons. First, claiming inability to pay, he voluntarily reduced the payment to $2,816.66 per month or $650 per week, and the chancellor was made aware of it by Katarina’s complaint for citation of contempt, filed within a month of the judgment of divorce. Yet the chancellor did not hold him in contempt. Second, effective September 2010, the chancellor increased Leslie’s payments from $2,816.66 per month, or $650 per week, to $3,250 per month, or $750 per week. Leslie had been paying only $650 per week since the judgment of divorce.
¶ 13. In his August 24, 2009 order addressing Katarina’s first complaint for citation for contempt and Leslie’s response, the chancellor determined that Leslie’s alimony arrearage of $16,400 had been extinguished.[2] The court did not find Leslie in contempt for paying only $650 per week and did not order him to comply with the judgment of divorce, which required a monthly alimony payment of $5,750. Instead, the court allowed Leslie to continue making the $650 weekly alimony payment and agreed to review the matter in January 2010. It is noteworthy that the August 2009 order stated that Leslie had agreed to dismiss his notice of appeal regarding the denial of his motion for reconsideration of the judgment of divorce ordering him to pay $5,750 per month in alimony. Thus, it is reasonable to conclude that the chancellor, while not formally reducing Leslie’s alimony payment, had determined that Leslie should not pay more than $650 per week, or $2,816.66 per *905 month at that time, thus effectively temporarily reducing Leslie’s alimony payment to $650 per week.
¶ 14. The chancellor did not review the alimony issue in January 2010 as he declared he would in the August 2009 order. However, both parties agree that an order was entered on November 12, 2010, ordering Leslie to pay $750 per week beginning on September 6, 2010.[3] Katarina alleges that because there was never a final determination on the issues of arrearage or of lowering the amount of alimony from $5,750 per month, the $750 per week was only a temporary weekly amount set by the court, and that as a result, the arrear-age should still be calculated based on the $5,750 per month that the February 2009 judgment of divorce ordered.[4]
¶ 15. We acknowledge that the August 2009 order indicated that there would be a further review of the alimony-arrearage issue. It appears from the record that that review did not occur until sometime prior to September 2010, at which time the court increased Leslie’s alimony payment from $650 per week to $750 per week, or $3,250 per month, as reflected in the November 2010 order. By increasing Leslie’s alimony payment from $650 per week to $750 per week, it seems to us that the court was giving final approval of the voluntary reduction in payment that the court had allowed to continue by virtue of its August 2009 order. Therefore, on these unique facts, we find that it would be fundamentally unfair and unjust to charge Leslie with a $58,550 arrearage. Both parties agree that as of the date of the hearing on April 27, 2011, Leslie was current with his $750 weekly payments previously ordered by the court. Therefore, we reverse and render that portion of the chancery court’s April 2012 order requiring Leslie to pay $58,550 in arrearage.

Ill MPACT Fund

¶ 16. Leslie asserts that the chancellor erred in ordering him to pay Rachel $13,361.50 for an MPACT account that he cancelled, as Rachel had no ownership rights in the account. The MPACT account was a college-savings account for Rachel, who was twenty-five years old and not in college at the time of the divorce in 2009. Leslie cancelled the account in 2010 and claimed that he used the money to repay his mother for loans that she had given him. Although Rachel was the beneficiary of the account, it appears from the record that Leslie had ownership rights in the account, as he had the authority to cancel it. We note that Katarina did not mention this matter in any of her pleadings, and the chancellor cited no basis during the hearing or in his order for requiring Leslie to pay his adult daughter for removing money from an account in which she had no ownership rights. Therefore, that portion of the judgment ordering Leslie to pay Rachel the $13,361.50 that he removed from the MPACT account is reversed and rendered.

IV. Ruling Nearly One Year from the Date of the Hearing

¶ 17. Leslie argues that the chancellor erred in ruling on the matter nearly one year from the date of the hearing. In effect, he argues that he was prejudiced because the chancellor could not have *906 made an effective ruling after allowing a substantial amount of time to pass. The hearing was held on April 27, 2011, and the order was issued on April 12, 2012. Leslie offers no authority that supports his argument. Therefore, he is procedurally barred from making this argument. See Edmonds v. Edmonds, 935 So.2d 980, 988 (¶ 22) (Miss.2006). Procedural bar notwithstanding, we find this issue is without merit.
¶ 18. Although Leslie claims that it is “impossible to insure that the court recalled testimony and exhibits after that length of time,” he does not prove that the court was actually unable to recall the testimony and exhibits from the case. There is also no indication in the record that the court was unable to recall the testimony and exhibits from the case. Therefore, we cannot find that the chancellor erred in issuing his order nearly one year after the hearing. This issue is without merit.
¶ 19. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
LEE, C.J., ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND MAXWELL, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.

. In its findings of fact and conclusions of law, issued on January 26, 2009, the chancery court found that Leslie's historical annual income (from 1996 to 2007) was $171,648 per year. The court did not specify whether the figure was gross or net income, but it appears that it is gross.

. The record reflects that the alimony arrear-age, as well as other debts that Leslie owed to Katarina at that time, had been eliminated when Leslie conveyed to Katarina his $16,250 interest in their former marital home and Leslie was given credit for $5,400, which Ka-tarina had removed from one of their trust accounts in June 2009.

. This order is not in the record. However, the order was the result of a hearing that was held sometime before September 2010, even though it was not filed until November 2010.

. The parties agree that if Leslie is not allowed any reduction in the amount of alimony for any period prior to April 27, 2011, his arrearage, based on the amount of alimony ordered in the judgment of divorce, totals $58,550.