# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00718-SCT

*LESLIE B. SHUMAKE, JR.*

*v.*

*KATARINA SITTON SHUMAKE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2012 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LESLIE B. SHUMAKE, JR. |
| | SABRINA D. HOWELL |
| | A. E. (RUSTY) HARLOW, JR. |
| ATTORNEY FOR APPELLEE: | T. JACKSON LYONS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED - 09/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.    The DeSoto County Chancery Court granted a Final Judgment of Divorce to Leslie

B. Shumake Jr. and Katarina Sitton Shumake in February 2009.   In the judgment, the

chancellor ordered Leslie to pay Katarina $5,750 per month in periodic alimony.  Shortly

thereafter, in March 2009, Katarina filed a complaint for citation for contempt, claiming that

Leslie had not paid the amount of alimony ordered by the chancellor.  From the time Katarina

filed her initial contempt complaint until April 2012, the chancery court held hearings and entered various orders addressing the alimony and Leslie's arrearage. In the end, the chancellor concluded that Leslie owed Katarina $58,550, plus interest, in arrearage.

¶2. Leslie appealed the chancellor's order, and the case was assigned to the Court of Appeals. *See Shumake v. Shumake*, ___ So. 3d ___, 2013 WL 6171303 (Miss. Ct. App. Nov. 26, 2013). The Court of Appeals held, *inter alia*, that "on [the] unique facts [of the present case], we find that it would be fundamentally unfair and unjust to charge Leslie with a $58,550 arrearage." *Id.* at *4. Thus, the Court of Appeals reversed and rendered this portion of the chancellor's order. *Id.* Having granted Katarina's Petition for Writ of Certiorari, we now consider whether the Court of Appeals erred by holding the arrearage award should be reversed and rendered.

## FACTS AND PROCEEDINGS IN THE CHANCERY COURT

¶3. The DeSoto County Chancery Court entered a Final Judgment of Divorce, granting Katarina a divorce from Leslie on the grounds of uncondoned adultery, on February 29, 2009. In the divorce judgment, the chancellor ordered Leslie to pay Katarina $5,750 per month in alimony, which was to be paid beginning February 1, 2009. On March 12, 2009, Katarina filed an Amended Complaint for Citation for Contempt, claiming, *inter alia*, that Leslie had paid only $650 per week in alimony, rather than the $5,750 per month ordered by the chancellor. Around this same time, Leslie filed for Chapter 13 bankruptcy. In response to Katarina's contempt complaint, Leslie claimed he was unable to pay the $5,750 per month alimony.

¶4. On August 24, 2009, the chancellor entered an Order on Katarina's contempt

2

complaint, finding that Leslie was in arrears to Katarina in the amount of $19,300. Some $16,400 of this amount resulted from the alimony arrearage. To address the arrearage, the chancellor ordered Leslie to convey his interest in the former marital home to Katarina via quitclaim deed. Leslie's interest in the home was valued at $16,250. Because the value of Leslie's interest in the home did not equal the arrearage amount, the chancellor ordered that Leslie immediately provide Katarina with the difference ($3,050). Also, the chancellor reserved the right to rule on any arrearage or future arrearage after a full year of accounting and analysis of Leslie's income.

¶5. According to the parties, the chancellor addressed Leslie's alimony payments and arrearage in a November 12, 2010, order. This order is not in the record, although it was discussed during an April 27, 2011, hearing. Based on the hearing testimony, Leslie had paid Katarina $750 per week in alimony beginning September 6, 2010. During the April 2011 hearing, the parties agreed that, if the original amount of alimony – $5,750 per month – had not been modified at any point, Leslie would owe $58,550 to Katarina in arrears. Rather than arguing any mathematical calculation, Leslie claimed that the November 2010 order retroactively modified his alimony payment.

¶6. A little more than one year later, on April 12, 2012, the chancellor entered an Order finding that Leslie was in arrears for $58,550. The order read, in part:

> beginning May 1, 2011, the monthly permanent periodic alimony payment of $5,750 payable by Leslie to Katarina shall be the amount of $3,250.00 per month (or $750.00 per week) until the Chapter 13 Plan bankruptcy payments of $4,293.50 are completed by Leslie in accordance with the United States Bankruptcy Court Northern District of Mississippi. . . . [T]he Court finds that Leslie is in arrears in the amount of $58,550.00 to Katarina plus interest at the legal interest rate. This amount shall be paid to Katarina beginning on the first

3

day of the first month following the completion of Leslie's Chapter 13 bankruptcy payments as ordered by the United States Bankruptcy Court Northern District of Mississippi, in the amount of $1,500.00 per month until paid in full.

## PROCEEDINGS IN THE COURT OF APPEALS

¶7.    Leslie appealed the chancellor's order to this Court, and the case was assigned to the Court of Appeals. *Id.* On appeal, Leslie claimed that the chancellor erred in ordering him to pay Katarina $58,550 in arrears for two reasons: (1) although the chancellor was aware Leslie had not paid the originally ordered $5,750 per month, he did not hold Leslie in contempt for the reduced payments or "voluntary reduction"; and (2) the chancellor increased the alimony payments from the "voluntarily reduced" payment of $650 per week to $750 per week in September 2010. *Id.* at *3. In response, Katarina argued that the $750 per week payment was only a temporary reduction because the chancellor never reached a final determination on the arrearage or lowered alimony payment. *Id.* at *4. As such, Katarina claimed that the arrearage should have been calculated based on the original alimony ordered – $5,750 per month. *Id.*

¶8.    The Court of Appeals found that, because of the unique facts of this case, the chancellor erred in ordering Leslie to pay $58,550 in arrearage:

> We acknowledge that the August 2009 order indicated that there would be a further review of the alimony-arrearage issue. It appears from the record that that review did not occur until sometime prior to September 2011, at which time the court increased Leslie's alimony payment from $650 per week to $750 per week, or $3,250 per month, as reflected in the November 2010 order.[1] By increasing Leslie's alimony payment from $650 per week to $750

_____

[1] Although the November 2010 order is not part of the record in today's case, Leslie attached a copy of the order as an exhibit to his appellate brief. It appears that the Court of

4

per week, it seems to us that the court was giving final approval of the voluntary reduction in payment that the court had allowed to continue by virtue of its August 2009 order. Therefore, on these unique facts, we find that it would be fundamentally unfair and unjust to charge Leslie with a $58,550 arrearage. Both parties agree that as of the date of the hearing on April 27, 2011, Leslie was current with his $750 weekly payments previously ordered by the court. Therefore, we reverse and render that portion of the chancery court's April 2012 order requiring Leslie to pay $58,550 in arrearage.

*Id.*

## STANDARD OF REVIEW

¶9. This Court applies a limited standard of review in alimony cases: "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *McCardle v. McCardle*, 862 So. 2d 1290, 1292 (Miss. Ct. App. 2004) (citing *Denson v. George*, 642 So. 2d 909, 913 (Miss. 1994)). Appellate courts will not substitute their "collective judgment for that of the chancellor." *McCardle*, 862 So. 2d at 1292 (citing *Richardson v. Riley*, 355 So. 2d 667, 668-69 (Miss. 1978)) ("A conclusion that we might have decided the case differently, standing alone, is not a basis to disturb the result.").

## ANALYSIS

¶10. Periodic alimony is subject to modification; a party, however, may not modify on his own – or as Leslie has described it, "voluntarily reduce" – court-ordered alimony payments:

---

Appeals considered this order as part of its analysis. Because this Court will not consider information outside of the record, the contents of this order will not be considered in today's appeal. *See Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002) ("Mississippi appellate courts may not consider information that is outside of the record.").

Periodic alimony is also subject to modification (by increase or decrease) or even termination, in the event of a material change of circumstances subsequent to the decree awarding alimony, although self help is pretermitted; that is, a change or modification may be made only upon order of the chancery court.

*Bowe v. Bowe*, 557 So. 2d 793, 794 (Miss. 1990). Periodic alimony vests on the date each payment becomes due. *Id.*; *see also* *Gregg v. Montgomery*, 587 So. 2d 928, 934 (Miss. 1991) (stating that, "[a] court cannot give relief from civil liability for any payments that have already accrued," when finding that the chancellor erred in not awarding unpaid alimony). Thus, from the outset, Leslie's actions of reducing his alimony payments from $5,750 per month to $650 per week were without legal effect. Moreover, Leslie's bankruptcy filing shortly after the chancellor entered the judgment of divorce is of no moment. *See* *Varner v. Varner*, 666 So. 2d 493, 497-98 (Miss. 1995) (recognizing that filing of bankruptcy does not, in all cases, "rise to the level of a substantial change" in circumstances); *see also* N. Shelton Hand, *Mississippi Divorce, Alimony, and Child Custody* §14-10 (6th ed. 2012) ("Obligations of child and or spousal support are not generally to be considered as or equated with any other debt known to and collectible under the law. There is more to these obligations than mere debt.").

¶11. Originally, the chancellor ordered Leslie to pay Katarina $5,750 per month in periodic alimony. Leslie never met this obligation. Instead, he paid Katarina $650 per week in alimony. Katarina filed a contempt complaint asking the chancellor to require Leslie to comply with the divorce judgment. In response to Katarina's contempt complaint, Leslie requested a modification, claiming that his extreme economic hardship had resulted in a substantial and material change in his circumstances. The chancellor then entered an order

6

requiring Leslie to transfer his interest in the marital home to Katarina to cover part of the arrearage at that time. Leslie was to pay the remaining amount of the arrearage from cash. Of particular note, the chancellor did not modify the alimony or specifically address Leslie's request for modification. Moreover, the order states that the chancellor "reserves the right to make a ruling regarding any arrearage and/or future arrearage . . . ."

¶12. According to the parties, the chancellor entered another order in November 2010 which required Leslie to pay Katarina $750 per week. This order is not in the record, although it was discussed at length at an April 2011 hearing, and the docket reflects that the chancellor entered an order at that time. At the hearing, Leslie argued that the November 2010 order temporarily modified the alimony. Katarina, on the other hand, maintained that Leslie was still required under the divorce judgment to pay $5,750 per month in alimony. Thus, Katarina claimed that Leslie owed $58,550 in arrears.

¶13. The chancellor, who was not the chancellor who entered the divorce judgment or prior orders in the case, ultimately found that the previous chancellor never entered an order permanently modifying the original divorce judgment which required Leslie to pay $5,750 per month in alimony. Thus, the chancellor found that Leslie was in arrears for $58,550 to Katarina. The chancellor ordered that Leslie, upon completion of his bankruptcy payments, pay Katarina for the arrearage in monthly payments of $1,500.

¶14. After reviewing the record in today's case and considering our law with respect to alimony modification, we cannot find that the chancellor abused his discretion. An alimony payment vests on the day it is due. *Bowe*, 557 So. 2d at 794. And a court order is required to modify alimony. *Id.* Because no order expressly modified Leslie's alimony obligation,

7

the chancellor in today's case did not abuse his discretion in ordering Leslie to pay the arrearage.

¶15. Further, the Court of Appeals' statement that it would be "fundamentally unfair and unjust" to require Leslie to pay the arrearage is supported by neither our caselaw nor the chancellor's order. The order considers – and provides some allowance for – Leslie's bankruptcy by allowing him to pay the arrearage when the bankruptcy is complete. Our caselaw addressing the effect of bankruptcy on alimony payments is consistent with this approach. *See Varner*, 666 So. 2d at 497-98. Finally, the chancellor's decision not to punish Leslie through contempt does not absolve Leslie's arrearage. *See* Hand, *Mississippi Divorce, Alimony, and Child Custody* § 14-6 ("If the responding party is found to be in contempt and refuses or fails without justification to pay the arrearages as previously required by the court, he *may* be punished by civil or criminal sanctions, or both.") (emphasis added). Put simply, Leslie's alimony payments vested on the day they were due and the record does not support a finding that the vested payments were or should have been modified. The chancellor did not abuse his discretion in ordering Leslie to pay the arrearage.

## CONCLUSION

¶16. For the reasons discussed above, we find that the chancellor did not abuse his discretion in ordering Leslie to pay the alimony arrearage owed to Katarina. Therefore, we reverse the Court of Appeals' judgment and reinstate and affirm the judgment of the DeSoto County Chancery Court.

¶17. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.**

8

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. LAMAR, J., NOT PARTICIPATING.**