IN THE SUPREME COURT OF MISSISSIPPI

NO. 2011-CT-01796-SCT

*ERIC JAMES FOSTER a/k/a ERIC FOSTER a/k/a
ERIC J. FOSTER*

*v.*

*STATE OF MISSISSIPPI*

<u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2011 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | WALTER BEESLEY |
| | RONNIE HARPER |
| | DEBRA BLACKWELL |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/16/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Eric Foster was sentenced to forty years after his conviction of armed robbery.  Foster

appeals his sentence.  Finding no error, we affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2.     Foster was indicted for ". . . wilfully, unlawfully and feloniously tak[ing] . . . the

personal property of the Bank of Franklin, against [the victims'] will by violence to [the

victims] or by putting [the victims] in fear of immediate injury . . . by the exhibition of a deadly weapon. . . ." The jury found the defendant guilty of armed robbery and was not instructed to recommend a sentence.

¶3.    At sentencing, the trial judge heard and considered testimony of one victim's harrowing experience and the traumatic effect the crime had on her life.[1] She testified that "[n]ever in a million years would I think that anybody in as evil of a world that we live in could be so callous as to do what you did with no concern." The victim asked the court to sentence Foster to the same forty years received by his accomplice, D.J. Wilson, after his conviction on September 14, 2010.

¶4.    In open court, petitioner's response declaring his innocence (for the crime for which he had just been convicted) exhibited no remorse. After the victim finished her impact statement, Foster verbally and profanely told the victim, "you f***ed your own life up."

¶5.    The trial judge sentenced Foster to forty years, absent objection, taking into account "the seriousness of the crime, the impact on the victims, and the defendant's prior conviction

---

[1] At sentencing, one of the victims provided the following impact statement:

> . . . Mr. Foster, you have been a every present nightmare in my life since December 2 at 2:26 when you sailed over that cubby and knocked me out of my chair. Never in a million years would I think that anybody in as evil of a world that we live in could be so callous as to do what you did with no concern. . . . You didn't have to bully us and knock me out of my chair and give me nightmares since December the 2nd. Because of you, I locked myself up in my house for two weeks. I quit a job that I absolutely loved. . . . You didn't just hurt me. You hurt my family. You hurt my friends. You hurt our belief in people, and I am not going to let you do that anymore. . . .

2

for aggravated assault and his age of thirty-five." No actuarial, mortality, or life-expectancy tables were offered by Foster.

¶6.     Foster filed a motion for judgment notwithstanding the verdict (JNOV) and a motion for a new trial, neither of which challenged his sentence. Once again, Foster presented no actuarial, mortality, or life-expectancy tables to the trial judge and offered no argument that the failure of the trial court to consider same was error. The motions were denied.

¶7.     On appeal to the Court of Appeals,[2] Foster raised, for the first time, that his sentence was illegal. The Court of Appeals held that Foster's claim was procedurally barred, based on his failure to raise the issue before the trial court. Notwithstanding the bar, the Court of Appeals found that his sentence did not amount to an illegal sentence. We granted Foster's petition for certiorari and limit our review to the issue presented on appeal, *verbatim et literatim*, "Is Foster's sentence illegal?"

**ANALYSIS**

¶8.     Despite making no objection before the trial court and presenting no tables of estimates, publications, or argument related to life expectancy, Foster belatedly argues that his sentence should be vacated because his sentence equates to a life sentence. Foster asks this Court to consider life-expectancy estimates and argument never presented at the trial level. Foster urges this Court to consider matters outside the record.

---

[2] ***Foster v. State***, 2013 WL 1200263 (Miss. Ct. App. March 26, 2013).

¶9.     This Court declines to consider matters which were never presented or argued in the trial court and are not part of the record before us today.

> This Court will not consider matters that do not appear in the record, and it must confine its review to what appears in the record. *Robinson v. State*, 662 So. 2d 1100, 1104 (Miss. 1995) (citing *Dillon v. State*, 641 So. 2d 1223, 1225 (Miss. 1994)). Issues cannot be decided based on assertions from the briefs alone. The issues must be supported and proved by the record. *Robinson*, 662 So. 2d at 1104 (citing *Ross v. State*, 603 So. 2d 857, 861 (Miss. 1992)).

*Pulphus v. State*, 782 So. 2d 1220, 1224 (Miss. 2001). "This Court has long held that it cannot consider that which is not in the record." *Stone v. State*, 94 So. 3d 1078, 1082 (Miss. 2012) (citing *State v. Cummings*, 203 Miss. 583, 591, 35 So. 2d 636, 639 (Miss. 1948) (citations omitted) ( "[b]eing an appellate court, we take the record as it comes to us, and receive no new evidence here."), *reh'g denied* (Aug. 23, 2012); *Pratt v. Sessums*, 989 So. 2d 308, 309-10 (Miss. 2008) (citation omitted) ("[w]e cannot consider evidence that is not in the record."). As recently as September 18, 2014, Justice King, writing for a unanimous Court, refused to consider an order which was not part of the record, stating that the Court would not consider as part of its analysis any information outside the record, even though it appeared that the Court of Appeals had considered the order. *Shumake v. Shumake*, 2012-CT-00718-SCT, 2014 WL 4638714, *2, ¶8, n.1 (Miss. Sept. 18, 2014) (citing *Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002) ("Mississippi appellate courts may not consider information that is outside the record."). In arguing that his sentence exceeds his estimated life expectancy, Foster unequivocally has gone outside the record. Considering "*evidence*" not presented to the trial court, the dissent by Justice King relies on matters outside the

4

record. Neither the websites referred to by Foster in his brief nor the arguments first presented on appeal will be considered, as neither was presented to the trial court below, and any analysis of these new issues comes solely from matters not in the record before us.

¶10.     "A contemporaneous objection must be made at trial in order to preserve an issue for appeal." *Cox v. State*, 793 So. 2d 591, 599 (Miss. 2001) (citing *Smith v. State*, 530 So. 2d 155, 162 (Miss. 1988)). "Errors related to improper sentencing are procedurally barred if no objection is made at trial." *Hughes v. State*, 983 So. 2d 270, 282 (Miss. 2008) (citations omitted); *Hobgood v. State*, 926 So. 2d 847, 857 (Miss. 2006); *Cox*, 793 So. 2d at 599. In *Cox*,[3] this Court held that when the defendant failed to object before the trial court that his thirty-year sentence for armed robbery "amount[ed] to" a life sentence, he was barred from doing so on appeal. *Cox*, 793 So. 2d at 598-599. Additionally, "[a] trial judge will not be found in error on a matter not presented to him for decision." *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995); *see also Jones v. State*, 606 So. 2d 1051, 1058 (Miss. 1992); *Crenshaw v. State*, 520 So. 2d 131, 134 (Miss. 1988); *Ponder v. State*, 335 So. 2d 885, 886 (Miss. 1976). Then-Judge King, writing for the Court of Appeals, recognized the bar in *Long v. State*, 982 So. 2d 1042, 1045 (Miss. Ct. App. 2008), holding that a sixty-four-year-old

---

[3] The King dissent attempts to distinguish the case *sub judice* from *Cox* because the defendant in *Cox* provided no evidence of life expectancy. (King Dis. Op. ¶44). This is a distinction without a difference, since this petitioner provided no evidence of life expectancy to the trial court at any stage of the proceeding. As stated *supra*, the proper avenue for submitting evidence to this Court is to first submit the evidence to a trial court, where it becomes part of the record reviewed by this Court. Merely providing a website address in an appellate brief can hardly be considered "evidence" (King Dis. Op. ¶44) and is violative of the appeals process.

defendant who had failed to object before the trial court that his sentence "amounted to" a life sentence was procedurally barred from raising the issue at the appellate level.

¶11.   The trial judge was never afforded the opportunity to consider the merits *vel non* of that issue. Faithful application of our precedent mandates that Foster's claim of error be denied, not having been preserved for appeal.

¶12.   This Court does recognize that there are exceptions to a procedural bar for errors affecting certain constitutional rights. ***Rowland v. State***, 98 So. 3d 1032, 1036 (Miss. 2012) ("[W]e recognized that the State has neither the authority nor the right to subject a person to double jeopardy. We also have recognized exceptions to procedural bars for claims asserting illegal sentence and denial of due process at sentencing."). This Court will waive a procedural bar related to sentencing only when the error results in an illegal sentence. "[A] sentence is not illegal unless it exceeds the maximum *statutory* penalty for the crime." ***Grayer v. State***, 120 So. 3d 964, 969 (Miss. 2013) (emphasis added). An illegal sentence is one that "does not 'conform to the applicable penalty statute.'" ***Id.*** (citation omitted). "In other words, a sentence is not illegal unless it exceeds the maximum *statutory* penalty for the crime." ***Id.*** (emphasis added). This sentence did not exceed the maximum *statutory* penalty. Section 97-3-79 of the Mississippi Code requires a court to sentence a defendant convicted of armed robbery to a term less than life but not less than three years, if the jury does not return a life sentence. Miss. Code Ann. § 97-3-79 (Rev. 2014).

¶13.   This Court consistently has held that "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by

6

statute." **Cox**, 793 So. 2d at 599 (quoting **Hoops v. State**, 681 So. 2d 521, 533 (Miss. 1996)). *See also* **Ellis v. State**, 326 So. 2d 466, 468 (Miss. 1976); **Ainsworth v. State**, 304 So. 2d 656 (Miss. 1974), and **Boone v. State**, 291 So. 2d 182 (Miss. 1974). Furthermore, we have held that a "sentence within the limits of the statute is not cruel or unusual." **Clanton v. State**, 279 So. 2d 599, 602 (Miss. 1973); **Green v. State**, 270 So. 2d 695 (Miss. 1972).

¶14. Foster cites **Stewart v. State (Stewart I)**, 372 So. 2d 257 (Miss. 1979), for the proposition that he received an illegal sentence. As is stated in Justice Coleman's special concurrence, no "statutory maximum" is provided in Section 97-3-79. In **Stewart I**, the Court added the language that a sentence must be "reasonably expected to be less than life." This language is not found in the statute. Additionally, **Stewart I** must be read with **Stewart v. State** (**Stewart II**), 394 So. 2d 1337, 1339 (Miss. 1981), to appreciate the Court's holdings and clear distinctions from today's case. In **Stewart I**, the Court found that a seventy-five-year sentence was excessive and remanded the case for resentencing. **Stewart I**, 372 So. 2d at 259. In **Stewart II**, the Court found that a seventy-five-year sentence "amounted to" a sentence twenty-five years longer than Stewart's cohorts' estimated life expectancy. **Stewart II**, 394 So. 2d at 1338-39. In **Stewart II**, the trial court, unlike the trial court in today's case, was presented with **evidence** of Stewart's life expectancy through testimony and a mortality table based on the general population.[4] Stewart appealed once again, and this Court affirmed

---

[4] The table used in **Stewart II** is attached as Appendix A.

7

his sentence of thirty-five years, holding that trial courts "*may* take judicial notice of mortality tables." *Id.* at 1339.

¶15.   We have addressed the use of life-expectancy tables numerous times and have consistently held these tables can be used as *aids* in determining sentences, if presented to the trial court. As early as 1937, this Court held that mortality tables can be used as *aids* to assist the trier of fact. *See Tucker v. Gurley*, 179 Miss. 412, 176 So. 279, 279 (1937). We are not the trier of fact in today's case. Recently, we held that life-expectancy charts are of "limited utility" in defining whether a sentence amounts to a life sentence. *Johnson v. State*, 29 So. 3d 738, 745 (Miss. 2009).  In *Johnson*, Justice Lamar wrote:

> [A]ttempts to define precisely at what point a term of years becomes a life sentence . . . [are] of limited utility. Estimated life expectancy is just that – an estimate. The reality is that some persons live beyond their life expectancies while others do not. To hold that a defendant's sentence must be a certain number of years or months less than his life expectancy would place unwarranted emphasis on a number that is itself only a rough approximation.

*Johnson*, 29 So. 3d at 744-45 (citing *U.S. v. Martin*, 115 F.3d 454, 455 (7th Cir. 1997)). Not a single justice disagreed. *See also Lindsay v. State*, 720 So. 2d 182, 186 (Miss. 1998), and *Henderson v. State*, 402 So. 2d 325 (Miss. 1980).

¶16.   Where Foster's argument fails is that none of the cases he cites stands for the proposition that a defendant may stand mute, present no **evidence** to the trial court, and then claim error on appeal that the trial court did not consider what he did not offer as **evidence**. Foster offers no excuse for the failure to present such **evidence** and argument to the trial court to support a claim of error.

8

¶17. In **Rogers v. State**, 928 So. 2d 831 (Miss. 2006), this Court held:

> As a general rule, this Court cannot disturb a sentence on appeal if that sentence is within the boundaries allowed by the statute. **Hoops v. State**, 681 So. 2d 521, 537 (Miss. 1996). Here, the sentence imposed by the trial court was acceptable as it did not exceed the statutory limits provided in Miss. Code Ann. § 97-3-65(2). *See* **Wilkerson v. State**, 731 So. 2d 1173, 1183 (Miss. 1999); *see also* **Freshwater v. State**, 794 So. 2d 274, 277 (Miss. Ct. App. 2001); **Shabazz v. State**, 729 So. 2d 813, 822 (Miss. Ct. App. 1998). Therefore, Rogers'[s] argument that he was sentenced to more time than was applicable at the time of his offense is without merit.

**Rogers**, 928 So. 2d at 835. Foster, a recidivist, was sentenced to a term of forty years by the trial court. This sentence conforms to the statute, i.e., the trial court did not sentence him to life and the term was more than three years. The trial court did not deviate from the statute when imposing the sentence. We find no abuse of discretion by the trial court.

¶18. This case is akin to **Lindsay v. State**, 720 So. 2d 182 (Miss. 1998), in which this Court upheld a sentence that likely "amounted to" a life sentence. **Lindsay**, 720 So. 2d at 182-83. In **Lindsay**, the defendant was convicted of armed robbery and sentenced to fifteen years, ten of which were mandatory. **Id.** at 183. Lindsay appealed on the grounds that the sentence "amounted to" a life sentence because of his HIV status. **Id.** at 185. Like Foster, Lindsay did not present any evidence of life expectancy. **Id.** at 186. This Court upheld the sentence, emphasizing that the defendant's repeated criminal history and failure to present any evidence as it related to life expectancy outweighed the potential that the sentence "amounted to" a life sentence. **Id.** This Court also noted that the defendant could not argue life expectancy when he failed to submit any proof from medical journals or any other sources. **Id.**

9

¶19.    This Court repeatedly has upheld sentences that likely "amount to" life sentences. In *Tate v. State*, 912 So. 2d 919, 932-934 (Miss. 2005), this Court upheld a sixty-year sentence that "for all practical purposes [amounted to a] life sentence" since the defendant would not be eligible for parole until the age of ninety-nine. The Court held "[t]he Legislature has made its decisions, and we may not impose our own opinion on the issue, *absent a constitutional violation* which we do not find." *Id.* at 934 (emphasis added). In *Cannon v. State*, 919 So. 2d 913, 915 (Miss. 2005), this Court upheld a 120-year sentence that "amounted to" a life sentence, even though the trial court made no "on-the-record finding and consideration of his age, health, or life expectancy." Other sentences that "amount to" a life sentence also have been upheld.  *Mosely v. State*, 104 So. 3d 839, 843 (Miss. 2012) (upholding a 126-year sentence); *Williams v. State*, 794 So. 2d 181 (Miss. 2001), *overruled on other grounds by Brown v. State*, 994 So. 2d 698, 703 (Miss. 2008).

¶20.    "This Court employs the plain-error rule only 'when a defendant's substantive or fundamental rights are affected.'" *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013) (citation omitted).  To find plain error, this Court first must determine "'if the trial court has deviated from a legal rule, whether that error is plain, clear[,] or obvious, and whether that error has prejudiced the outcome of the trial.'" *Id.* (citation omitted). Under the plain-error doctrine, "there has to be a finding of error, and that error must have resulted in a manifest miscarriage of justice for reversal to occur." *Williams v. State*, 134 So. 3d 732, 736 (Miss. 2014) (citing *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989)). Foster has failed to show any error,

10

much less plain error, or that a miscarriage of justice has been visited upon this twice-convicted felon.

¶21.    After receiving all evidence, the trial court found that forty years was a proper and legal term based on the "seriousness of the crime [armed robbery of two bank tellers], the impact on the victims [job loss and 'ever present nightmare'], prior conviction for aggravated assault [violent propensity] and his age of thirty-five."  The trial judge made explicit reference to petitioner's age, contrary to petitioner's argument on appeal. The sentence is not an excessive sentence.[5]

¶22.    The trial court articulated and followed the correct standard.  The learned trial judge weighed evidence before him and meted out a fair and reasonable term (not life) sentence. Drawing on the wealth of his experience as a trial judge, Judge Johnson utilized his discretion and imposed a forty-year sentence.  After receiving all **evidence** offered at the sentencing hearing, the trial court found that forty years was a proper and legal sentence. The trial court's holding does not reveal a "manifest miscarriage of justice."

¶23.    The forty-year sentence received by petitioner, a twice-convicted felon of armed robbery and aggravated assault, is not constitutionally infirm, nor does it exceed the trial court's sentencing authority provided by Section 97-3-79 of the Mississippi Code.  Given that the sentence is permissible under the Code and our state and federal Constitutions, there

---

[5] Petitioner's thirty-one-year-old accomplice received a forty-year term sentence which was unanimously affirmed. *See **Wilson v. State**, 102 So. 3d 1200 (Miss. Ct. App. 2012).

11

exists no basis to declare it illegal post-factum. A trial judge has the discretion to consider all relevant and pertinent factors when fixing a sentence. It is incumbent on the defendant to introduce evidence of mitigating factors or circumstances to seek reduction of the term within the statutory scheme.

## CONCLUSION

¶24.  "Our law has long provided that the imposition of sentence following a criminal conviction is a matter within the discretion of the Circuit Court, *subject only to statutory and constitutional limitations*." ***Jackson v. State***, 551 So. 2d 132, 149 (Miss. 1989) (emphasis added). The sentence received by Foster, a recidivist of violent crimes, is not constitutionally infirm, nor does it exceed the trial court's sentencing authority. Given that the sentence is permissible under the Mississippi Code and our state and federal Constitutions, there exists no basis to accept Foster's argument that his sentence is illegal. As the sentence imposed by the learned trial judge and affirmed by the Court of Appeals was and is a legal sentence, we affirm.

¶25.  **CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL RECEIVE FULL CREDIT FOR TIME ALREADY SERVED. APPELLANT SHALL PAY ALL COURT COSTS AND FEES.**

**WALLER, C.J., LAMAR AND PIERCE, JJ., CONCUR. COLEMAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY CHANDLER, J. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.; DICKINSON, P.J., JOINS IN PART.**

12

# COMMISSIONERS

# 1958

## STANDARD ORDINARY MORTALITY TABLE

### Complete Expectation of Life

| Age | Years | Age | Years | Age | Years | Age | Years |
|-----|-------|-----|-------|-----|-------|-----|-------|
| 0 | 68.30 | 25 | 45.82 | 50 | 23.63 | 75 | 7.81 |
| 1 | 67.78 | 26 | 44.90 | 51 | 22.82 | 76 | 7.39 |
| 2 | 66.90 | 27 | 43.99 | 52 | 22.03 | 77 | 6.98 |
| 3 | 66.00 | 28 | 43.08 | 53 | 21.25 | 78 | 6.59 |
| 4 | 65.10 | 29 | 42.16 | 54 | 20.47 | 79 | 6.21 |
| 5 | 64.19 | 30 | 41.25 | 55 | 19.71 | 80 | 5.85 |
| 6 | 63.27 | 31 | 40.34 | 56 | 18.97 | 81 | 5.51 |
| 7 | 62.35 | 32 | 39.43 | 57 | 18.23 | 82 | 5.19 |
| 8 | 61.43 | 33 | 38.51 | 58 | 17.51 | 83 | 4.89 |
| 9 | 60.51 | 34 | 37.60 | 59 | 16.81 | 84 | 4.60 |
| 10 | 59.58 | 35 | 36.69 | 60 | 16.12 | 85 | 4.32 |
| 11 | 58.65 | 36 | 35.78 | 61 | 15.44 | 86 | 4.06 |
| 12 | 57.72 | 37 | 34.88 | 62 | 14.78 | 87 | 3.80 |
| 13 | 56.80 | 38 | 33.97 | 63 | 14.14 | 88 | 3.55 |
| 14 | 55.87 | 39 | 33.07 | 64 | 13.51 | 89 | 3.31 |
| 15 | 54.95 | 40 | 32.18 | 65 | 12.90 | 90 | 3.06 |
| 16 | 54.03 | 41 | 31.39 | 66 | 12.31 | 91 | 2.82 |
| 17 | 53.11 | 42 | 30.41 | 67 | 11.73 | 92 | 2.58 |
| 18 | 52.19 | 43 | 29.54 | 68 | 11.17 | 93 | 2.33 |
| 19 | 51.28 | 44 | 28.67 | 69 | 10.64 | 94 | 2.07 |
| 20 | 50.37 | 45 | 27.81 | 70 | 10.12 | 95 | 1.80 |
| 21 | 49.46 | 46 | 26.95 | 71 | 9.63 | 96 | 1.51 |
| 22 | 48.55 | 47 | 26.11 | 72 | 9.15 | 97 | 1.18 |
| 23 | 47.84 | 48 | 25.27 | 73 | 8.69 | 98 | .83 |
| 24 | 46.73 | 49 | 24.45 | 74 | 8.24 | 99 | .50 |

**COLEMAN, JUSTICE, SPECIALLY CONCURRING:**

¶26.   I concur with the majority, but I write separately because, in my opinion, the Mississippi Supreme Court exceeded the boundaries of its constitutional authority when, in *Stewart v. State*, 372 So. 2d 257 (Miss. 1979), it amended Mississippi Code Section 97-3-79 to prohibit a judge from sentencing one convicted of armed robbery to any term of years greater than three.  I am of the opinion that *Stewart* must be overruled.

¶27.   We many times have noted, but perhaps fewer times followed, the principle that our role in the constitutional framework of our state government "should not place [the Court] in the position of changing the substantive law enacted by the Legislature." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶ 12) (Miss. 2013) (citing *Stockstill v. State*, 854 So. 2d 1017, 1022-23 (¶ 13) (Miss. 2003) ("It is not the duty of this Court to add language where we see fit.")).  Stated differently, we have a "constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation." *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (¶ 17) (Miss. 2010).  The Legislature "alone has the power to create *and modify* statutes.  It is not the province of the Court to insert requirements where the Legislature did not do so." *Finn v. State*, 978 So. 2d 1270, 1272-1273 (¶ 9) (Miss. 2008) (emphasis added); *see also Zambroni v. State*, 217 Miss. 418, 424, 64 So. 2d 335, 337 (1953) ("It is not our province to write the statutes, but only to construe them as written."); *Harris v. State*, 179 Miss. 38, 175 So. 342, 344 (1937) ("In construing this statute, we are admonished and have clearly in mind that penal statutes must be strictly construed, and that the court can neither add to nor take from them, and we cannot by judicial construction, or considerations of

14

expediency, supply what is palpably omitted from a statute."). Despite such limits on our power, the **Stewart** Court did indeed insert a requirement into Section 97-3-79 that the Legislature did not – the requirement that a judge-imposed sentence be for less than the defendant's reasonable life expectancy.

¶28.   Section 97-3-79 provides as follows:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.

The statute as enacted by the Legislature provides two, and only two, sentencing possibilities. First, a jury may choose to sentence the offender to a life sentence. If not, the judge may impose a penalty of imprisonment "*for any term* not less than three (3) years." Miss. Code Ann. § 97-3-79 (Rev. 2014) (emphasis added). The requirement that the latter option, a judicially imposed sentence, be for less than the life expectancy of the defendant is not in the statute. It was created by the Court.

¶29.   The **Stewart** Court explained its creation of the requirement by comparing Section 97-3-79 to the death penalty statute, which places the death sentence "within the sole province of the jury." **Stewart**, 372 So. 2d at 258 (quoting **Bullock v. Harpole**, 233 Miss. 486, 494, 102 So. 2d 687, 690 (1958)). However, the statute at issue in **Bullock**, the then-existing Section 2536, Code of 1942, provided by its very terms that only the jury could impart the

15

death penalty. In fact, the way it was worded, Section 2536, Code of 1942, left all sentencing options in the sole province of the jury.[6] ***Bullock***, 233 Miss. at 494, 102 So. 2d at 690. Nothing at all in the wording of Section 97-3-79 prohibits the trial judge from setting a penalty of years greater than the life expectancy of the one convicted. To achieve such a result, the ***Stewart*** Court had to add to the language chosen by the Legislature.

¶30. Even if the ***Stewart*** Court was correct, that, in its wisdom, Section 97-3-79 made better sense and better policy with the added requirement, under our State's Constitution and the strict separation of powers it explicitly imposes in Article 1, Section 2, we lack the power to substitute our judgment for that of the Legislature and to judicially amend its statutes. The prohibition exists for good reason. As we elsewhere noted,

> The objectives desired to be accomplished and the evils sought to be prevented by separation of governmental powers were articulated by the authors of The Federalist. In that work James Madison stated:
>
> > . . . It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It

---

[6] The statute provided as follows:

In any case in which the penalty prescribed by law upon the conviction of the accused is death, except in cases otherwise provided, the jury finding a verdict of guilty may fix the punishment at imprisonment for the natural life of the party; and thereupon the court shall sentence him accordingly; but if the jury shall not thus prescribe the punishment, the court shall sentence the party found guilty to suffer death, unless the jury by its verdict certify that it was unable to agree upon the punishment, in which case the court shall sentence the accused to imprisonment in the penitentiary for life.

***Bullock***, 102 So. 2d at 690 (quoting Section 2536, Code of 1942).

16

is equally evident, that none of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it.

*The Federalist*, No. 48 (J. Madison) (J. Cooke ed. 1961).

Thomas Jefferson also wrote of the necessity of internal restraints on the powers of government:

> . . . An elective despotism was not the government we fought for, but one which should not only be founded on free principles, but in which the powers of government should be so divided and balanced among several bodies of magistry, as that no one could transcend their legal limits, without being effectually checked and restrained by the others. For this reason that convention which passed the ordinance of government, laid its foundation on this basis, that the legislative, executive, and judiciary departments should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time. Jefferson, "Notes on the State of Virginia", 1781-1785, ch. 13, as reprinted in "the Complete Jefferson" by Padover, Ch. XIV, pp. 648, 649.

***Book v. State Office Building Commission***, 238 Ind. 120, 149 N.E.2d 273, 294 (1958).

In his farewell address George Washington observed,

> The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism. A just estimate of the love of power, and proneness to abuse it, which predominates in the human heart, is sufficient to satisfy us of the truth of this position.

***Book v. State Office Building Commission***, 149 N.E.2d at 294.

*Alexander v. State*, 441 So. 2d 1329, 1336 (Miss. 1983).

¶31. Our trial courts are perfectly capable of enforcing Section 97-3-79 as written and without the extra requirement added by the *Stewart* Court. *See Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 288-289 (¶ 13) (Miss. 2007) ("[T]his Court has no right, prerogative, or duty to bend a statute to make it say what it does not say. No citation of authority is necessary for the proposition that courts, judges, and justices sit to apply the law as it is, not make the law as they think it should be."). As we wrote in *McAdory v. State*, 354 So. 2d 263 (Miss. 1978), the statute as written simply means that, if a jury chooses a life sentence, the trial judge has no discretion and must impart a life sentence. *Id.* at 266. If the jury did not so choose, the trial judge has discretion to impart any sentence greater than three years. *Id.* A sentence of one hundred years imposed after a jury declines to mandate a life sentence violates no part of the statute as crafted by the Legislature. It violates *only* the *Stewart* Court's language.

¶32. The *Stewart* requirement is nothing but the unconstitutional imposition of judicial power over a political question. *See Monaghan v. Reliance Mfg. Co.*, 236 Miss. 462, 470 111 So. 2d 225 (1959) ("The function of the court is to construe the legislative act and not to add to it or deduct from it that which the legislature itself did not enact into the statute."). We must guard against such overreaching, even if doing so means revisiting an old decision which has shaped how criminals have been sentenced for decades. When it comes to any movement, no matter how slight, toward consolidation of power in one, rather than three, branches of government, we must exercise the utmost caution. "Frequently an issue of this sort will come before the Court clad, so to speak, in sheep's clothing: the potential of the

asserted principle to effect important change in the equilibrium of power is not immediately evident, and must be discerned by a careful and perceptive analysis." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

¶33.	Cries of *stare decisis* are the inevitable effect caused by a call to overturn a decades-old case such as *Stewart*, and the Court should take care to adhere to the doctrine where appropriate. However, I discern no reason to dogmatically cling to it here. As an initial matter, we apply *stare decisis* when the Legislature ratifies our holding by re-enacting or amending the statute without directly addressing or contradicting a holding of ours from an earlier case. *See Caves v. Yarbrough*, 991 So. 2d 142, 153 (¶ 41) (Miss. 2008). However, the Legislature has not amended or changed Section 97-3-79 since before *Stewart*, and we have flatly rejected that "the Legislature's mere silence is enough [,] " absent an amendment, to invoke *stare decisis*. *Caves*, 991 So. 2d at 153.

¶34.	More generally, we have written as follows:

> In *stare decisis* generally, we look for error, but, finding that, we look for more and we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is "pernicious," *Stone v. Reichman-Crosby Co.*, 43 So. 2d 184, 190 (Miss. 1949); "impractical," *Robinson v. State*, 434 So. 2d 206, 210 (Miss. 1983) (Hawkins, J., concurring); or is "mischievous in its effect, and resulting in detriment to the public." *Childress v. State*, 188 Miss. 573, 577, 195 So. 583, 584 (1940). We look for "evils attendant upon a continuation of the old rule." *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 467 (Miss. 1983).

*Caves*, 991 So. 2d at 151-52 (¶ 36) (quoting *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 635 (Miss. 1991)). Above, I attempted to go into some detail of the importance of the separation of powers and explain that even a small encroachment of the Court into the

19

legislative sphere should be prevented. For the reasons discussed, I have no difficulty in labeling the **Stewart** Court's amendment of Section 97-3-79 pernicious and mischievous in its effect. *See **Gwin, White & Prince, Inc. v. Henneford***, 305 U.S. 434, 454-55(1939) (Black, J., dissenting) ("[T]he rule of *stare decisis* cannot confer powers upon the courts which the inexorable command of the Constitution says they shall not have."); **Robinson v. City of Detroit**, 462 Mich. 439, 473, 613 N.W.2d 307, 324 (2000) (Corrigan, J., concurring) ("If a prior decision of this Court reflects an abuse of judicial power at the expense of legislative authority, a failure to recognize and correct that excess, even if done in the name of *stare decisis*, would perpetuate an unacceptable abuse of judicial power.").

¶35. On a final *stare decisis* note, I acknowledge that Mississippi Code Section 97-3-65(4)(a), which sets the penalty for forcible rape, provides as follows:

> Every person who shall have forcible sexual intercourse with any person, or who shall have sexual intercourse not constituting forcible sexual intercourse or statutory rape with any person without that person's consent by administering to such person any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance, upon conviction, shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment, the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine.

Miss. Code Ann. § 97-3-65(4)(a) (Rev. 2014). Without question, the above-quoted sentencing directive mirrors that of the armed robbery sentencing statute at issue, and in **Lee v. State**, 322 So. 2d 751, 753 (1975), we added the same amendment to Section 97-3-65(4)(a) that the **Stewart** Court would later add to Section 97-3-79. Unlike Section 97-3-79, the

Legislature amended the forcible rape statute, Section 97-3-65(4)(a), since *Lee* was decided and has never spoken to the *Lee* holding. Accordingly, the doctrine of *stare decisis* via legislative ratification arguably would apply to *Lee* and Section 97-3-65(4)(a). On the other hand, while Section 97-3-79 is worded similarly to the forcible rape statute, I see no reason to apply the Legislature's amendment of a different statute to the question of whether *stare decisis* applies to *Stewart.*

¶36. Even if the Legislature had amended Section 97-3-79, I would not agree that *stare decisis* saves the *Stewart* Court's amendment of it. I simply cannot agree that our assumption that the Legislature reads our opinions and ratifies our holdings by their silence is enough to confirm an unconstitutional encroachment upon its authority. While, as I concede above, we have held that the Legislature ratifies via its silence our interpretation of a statute by re-enacting or amending the statute without directly addressing or contradicting a holding of ours from an earlier case, *see Caves*, 991 So. 2d at 153 (¶ 41), the combination of legislative action with legislative silence can itself be a pernicious thing for a court trying to discern the meaning of statutory pronouncements.

> The last string to respondents' and the Government's bow is their argument that two amendments to Title VI "ratified" this Court's decisions finding an implied private right of action to enforce the disparate-impact regulations. . . . Respondents point to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S., at 381-382, 102 S. Ct. 1825, which inferred congressional intent to ratify lower court decisions regarding a particular statutory provision when Congress comprehensively revised the statutory scheme but did not amend that provision. But we recently criticized Curran's reliance on congressional inaction, saying that "[a]s a general matter . . . [the] argumen[t] deserve[s] little weight in the interpretive process." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S., at 187, 114 S. Ct.

21

1439. And when, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments, we have spoken more bluntly: "It is 'impossible to assert with any degree of assurance that congressional failure to act represents' affirmative congressional approval of the Court's statutory interpretation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 175, n.1, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989) (quoting *Johnson v. Transportation Agency, Santa Clara Cty.*, 480 U.S. 616, 671-672, 107 S. Ct. 1442, 94 L. Ed. 2d 615 (1987) (Scalia, J., dissenting)).

*Alexander v. Sandoval*, 532 U.S. 275, 291-92 (2001). I find persuasive the warning, "It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it." J. Madison, *The Federalist*, No. 48 (J. Cooke ed. 1961). Accordingly I consider the United State Supreme Court's concerns to be compelling, especially in the context of ratifying an unconstitutional encroachment by the Court into the power of the Legislative branch.

¶37. The position I take further raises concerns about the retroactive application of any holding overruling *Stewart* to Foster. *See Rogers v. Tennessee*, 523 U.S. 451, 457 (2001). Were the majority to overrule *Stewart*, we would have to analyze whether or not the overruling of it would be retroactive and effective as to Foster's sentence. For example, the Supreme Court of the United States has written,

> Deprivation of the right to fair warning, we continued, can result both from vague statutory language and from an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face. For that reason, we concluded that if a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, the construction must not be given retroactive effect.

22

*Rogers*, 532 U.S. at 457 (internal quotations and citations omitted).  However, in light of the fact that a majority of the Court disagrees and wishes to uphold *Stewart*, I will forego the analysis as moot.

¶38.    For the foregoing reasons, I would overrule *Stewart.*

**DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J., JOIN THIS OPINION IN PART.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶39.    For the reasons stated in his scholarly and well-reasoned concurrence, I agree with Justice Coleman that we should overrule *Stewart v. State*,[7] though I believe due-process considerations would require this Court to apply *Stewart* to Foster's case.  And I agree with Justice King's flawless application of *Stewart* to the facts of this case.

**CHANDLER, J., JOINS THIS OPINION IN PART**.

**KING, JUSTICE, DISSENTING:**

¶40.    Because I believe that Foster's sentence is illegal, as it is not reasonably less than his life, I dissent.  Because I believe that the majority's rendition of the facts is incomplete, I begin with a recitation of those facts.

¶41.    On December 2, 2009, the Bank of Franklin was robbed.  The police eventually arrested Donald Wilson, Tyrone Butler, and Eric Foster for the robbery.  Foster was indicted for armed robbery and tried on October 18, 2011.  That same day, the jury found him guilty,

---

[7] *Stewart v. State*, 372 So. 2d 257 (Miss. 1979).

and the trial court held a sentencing hearing.[8]  Immediately after the jury was excused, the

trial court stated: "let the record show that the Court finds that there will be no need to order

a pre-sentence investigation in this matter, and the Court *will* proceed with sentencing."

(Emphasis added.)  The trial court did not give the defendant any time to prepare for

sentencing or any options regarding sentencing.  In a bench ruling, the trial court sentenced

Foster to forty years, and Foster did not make a contemporaneous objection.  In its written

sentencing order, the trial court stated that it "considered the seriousness of the crime, the

impact on the victims, and the defendant's prior conviction for aggravated assault and his age

of thirty-five."[9]  Foster filed a motion for judgment notwithstanding the verdict and a

---

[8]The State chose not to pursue a life sentence fixed by the jury.  Miss. Code Ann. § 97-3-79 (Rev. 2014).

[9]The majority implies that the trial court considered Foster's "lack of remorse," despite the fact that the trial court never indicated it considered such.  Maj. Op. ¶ 4.  The majority, in either overzealous exaggeration or an apparent attempt to inflame readers, suggests that Foster exhibited no remorse because he "verbally and profanely" attacked the victim during the sentencing hearing.  Maj. Op. ¶ 4.  The majority's suggestion mischaracterizes the exchange.  We note that the victim admitted she did not see the robbers' faces or really look at them closely during the less than two minutes they spent robbing the bank, and, while we certainly do not minimize her trauma, her physical injuries were not serious, consisting of some bruising and carpet burns, as well as "mental hurt" and "hurt feelings."  While Foster's statements were certainly inadvisable, he was not attacking the victim, but making a protestation of innocence.  The entire exchange, as opposed to the "modified" version presented by the majority, is as follows:

> BY [THE VICTIM]:        Your Honor, Mr. Foster, you have been a [sic] every [sic] present nightmare in my life since December 2 at 2:26 when you sailed over that cubby and knocked me out of my chair.  Never in a million years would I think that anybody in as evil of a world that we live in could be so callous as to do what you did with no concern.  You know, get your money. Get your money and leave.  We'd have give [sic] you the money.  You didn't

24

have to bully us and knock me out of my chair and give me nightmares since December the 2nd. Because of you, I locked myself up in my house for two weeks. I quit a job that I absolutely loved. I left people over there in Roxie that I absolutely loved because of you, but now I don't have to worry about you anymore. I don't have to look over my shoulder and wonder if this young man walking up with a hoodie on is you because I know where you're going to be. I know where the other man that was with you is going to be for about 40 years, and I hope that's as long as you go with him. You got a lot of time to think about what you did. You didn't just hurt me. You hurt my family. You hurt my friends. You hurt our belief in people, and I am not going to let you do that anymore. You're done. As far as I am concerned, you're done. I won't ever have to worry about you again for as long as I live. Thank you.

BY THE COURT: Does the State have anything further?

BY MS. BLACKWELL: No, Your Honor.

BY THE COURT: Does the defendant have anything that . . . he cares to say? Mr. Foster, you can make any statement to the Court you care to before sentencing, either yourself or through counsel, Mr. Beesley, or anyone else on your behalf.

BY THE DEFENDANT: Man, that lady don't even know me from the man in the moon, and as far as Tyrone, I felt like he was baiting me in by calling me up there while I was serving him. Man, ain't none of this is right. That lady don't know me, and she's sitting there placing all this on me, but she don't even know me. She ain't seen me nary a day of her life but today. Y'all convicting an innocent man. Y'all, I got three children out there, bro. I ain't never done nary a robbery. I maybe done hurt somebody before, but, now, I ain't never done nary a robbery. Y'all sitting here convicting me over what a habitual offender say. That man is known to be robbery [sic]. I ain't got no robbery on me. Why you sit there, I done f***ed your life up. You f***ed your own life up.

BAILIFF ASHLEY: Hey, hey.

BY THE COURT: Just a second, sir –

BY A SPECTATOR: Twelve jurors convicted you.

25

motion for new trial, neither of which challenged his sentence. The trial court denied both motions, and Foster appealed, arguing that the verdict was not supported by the weight of the evidence and that his sentence is illegal, as it exceeds a term reasonably expected to be less than life. The Court of Appeals affirmed the trial court. Chief Judge Lee, joined by three other judges, concurred in part and dissented in part, arguing that Foster's sentence is illegal. Foster petitioned this Court for a writ of certiorari on the sole issue of whether his sentence is illegal, and we granted his petition.

¶42. On February 21, 2014, on its own motion, this Court found supplemental briefing to be necessary, and ordered the parties to brief the following issues:

> 1) Does Mississippi Code Section 97-3-79 preclude a trial judge from imposing a sentence of a term of years in excess of a defendant's life expectancy when the jury has not imposed a sentence of life?
> 2) If Mississippi Code Section 97-3-79 allows a trial judge to impose a sentence in excess of a defendant's life expectancy where the jury has not imposed a life sentence, was **Stewart v. State** therefore wrongly decided?
> 3) If **Stewart v. State** was wrongly decided, does the doctrine of *stare decisis* nonetheless bind this Court to the interpretation of Mississippi Code Section 97-3-79 made by the Court in **Stewart**?

---

BY THE COURT:           Just a second –

BY A SPECTATOR:         Twelve jurors convicted you.

BY THE DEFENDANT:   She was talking to me.

BY THE COURT:           Mr. Foster, you can continue with any statement
you have to the Court.

BY THE DEFENDANT:   Y'all get me on up out of here. Y'all convicting
an innocent man.

26

¶43.    The parties timely filed supplemental briefs addressing these issues, as requested by the Court.

## ANALYSIS

¶44.    "If no contemporaneous objection is made at trial, a party must rely on the plain error rule to raise the assignment of error on appeal." *Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006). The plain error doctrine applies when an error exists and that error caused a manifest miscarriage of justice. *Id.* "The plain error rule will only be applied when a defendant's substantive or fundamental rights are affected." *Id.* "[D]efendants have a fundamental, constitutional right to be free from illegal sentences," thus a challenge to the legality of a sentence raised for the first time on appeal may be reviewed for plain error. *Harris v. State*, 99 So. 3d 169, 172 (Miss. 2012). The majority argues that *Cox v. State* requires we apply a procedural bar to Foster's argument, but the majority misconstrues the holding in *Cox*. Maj. Op. ¶ 10, *Cox v. State*, 793 So. 2d 591 (Miss. 2011). In *Cox*, this Court found the argument procedurally barred because the defendant "provided *this Court* with nothing but his own musings. He has not provided *this Court* with . . . anything . . . that may qualify as evidence. Nor has he shown that the judge's estimation of the life expectancy of a *black male* was incorrect." *Cox*, 793 So. 2d at 599 (emphases added). Conversely, Foster presents *this Court* with evidence in the form of actuarial tables, of which we may take judicial notice, indicating that his sentence lies outside the statutory limits and showing that "the judge's estimation of the life expectancy of a *black male* was incorrect." *See id.* The majority also

27

insists on citing the inapposite ***Long v. State***[10] in support of procedural bar, yet misrepresents what it held, stating that it held that a defendant "who had failed to object at trial that his sentence 'amounted to' a life sentence was procedurally barred from raising the issue at the appellate level." Majority ¶10. ***Long*** was an appeal from a denial of a motion for post-conviction relief. Contrary to holding that Long was procedurally barred from failing to object to his sentence at trial, the court held that "Long did not raise this issue before the trial court in *his motion for post-conviction relief*. Therefore, this issue is procedurally barred." ***Long v. State***, 982 So. 2d 1042, 1045 (Miss. Ct. App. 2008) (emphasis added). Moreover, the sentence in that case was not illegal, and thus not subject to the procedural bar applicable in this case.[11]

---

[10]My colleagues in the majority, Justices Waller, Randolph, Lamar, and Pierce, publicly credit me and one of my Court of Appeals opinions, ***Long v. State***, with supporting their application of a procedural bar in this case. That is inaccurate. ***Long*** is inapposite and inapplicable. I am concerned that my colleagues in the majority have either not fully read ***Long***, or have conveniently misstated and misapplied ***Long***. The same goes for the public credit they give to me for my opinion in ***Shumake v. Shumake***, 2014 WL 4638714 (Miss. Sept. 18, 2014). The majority represents that this "Court refused to consider an order which was not part of the record, stating that it would not consider as part of its analysis any information outside the record, even though it appeared that the Court of Appeals considered the order." Maj. Op. ¶9. Actually, ***Shumake*** presents the *opposite* situation to the one today. The order referred to *was* part of the trial court record, contrary to the majority's intimation otherwise. In fact, the trial court entered the order, so it clearly and obviously considered it. The issue was that the parties failed to place the order in the *appellate* record, so this Court could not review that which was not before us. As explained below, Foster did present us with a life expectancy table, and this Court has held that we may take judicial notice of life expectancy tables. Thus, unlike in ***Shumake***, this Court properly has before it the information it is asked to consider.

[11]***Long*** is inapplicable on the merits, despite the majority's intimation otherwise, as it noted that "this Court has held that when the Legislature has affixed *a set term of years as*

28

¶45.    Once convicted of armed robbery, the statute provides that a defendant "shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years."  Miss. Code Ann. § 97-3-79 (Rev. 2014).  Therefore, the Legislature determined that *only* the jury may fix a life sentence.

¶46.    In such cases in which the court fixes the sentence, the court may not sentence the defendant to a life term, but must sentence the defendant to a term reasonably expected to be less than life.  *Stewart v. State*, 372 So. 2d 257, 258 (Miss. 1979).  Thus, we must follow the mandate in *Stewart* that when a court, rather than a jury, fixes the sentence of a defendant under the armed robbery statute, the sentence must be "a definite term reasonably expected to be less than life."  *Stewart*, 372 So. 2d at 259.

¶47.    In determining an appropriate sentence, the trial court should "*make a record of and consider* all relevant facts necessary to fix a sentence for a definite term *reasonably* expected to be less than life."  *Stewart*, 372 So. 2d at 259 (emphases added).  The Court in *Stewart* held that the trial court "*should* consider the age *and* life expectancy of the defendant *and* any other pertinent facts which would aid in fixing a proper sentence."  *Id.* (emphases added). It is very clear that, when determining a sentence that must be "less than life," the trial court

_____

*the maximum sentence* and has allowed that sentence to be imposed by a trial judge, as is the case here, the trial judge is not required to apply a term less than life in accordance with actuarial tables." *Long v. State*, 982 So. 2d 1042, 1045 (Miss. Ct. App. 2008) (emphasis added).

must consider the life expectancy of the defendant in order to determine a sentence length that is reasonably expected to amount to "less than life." A court may not sentence a defendant to an extraordinarily lengthy term of years in order to circumvent the requirement that only a jury may impose a life sentence. I would not hold that life expectancy must be the sole basis of a sentence for armed robbery. Indeed, a court should consider "any other pertinent facts which would aid in fixing a proper sentence." *Id.* However, in considering these facts, the trial court operates under a statutory maximum in that the sentence must be reasonably less than life. In other words, the statute mandates that a trial court must cap its sentence at a term reasonably less than the defendant's life. The statute does mandate that an armed robbery sentence must be reasonably less than life, rendering a defendant's reasonable life expectancy as the statutory maximum. As with any sentencing scheme with a statutory maximum, the trial court should consider many factors in sentencing, but may not exceed the statutory maximum when handing down the ultimate sentence.

¶48. The trial court in this case utterly failed to consider Foster's life expectancy, as *Stewart* requires it to do. The majority indicates that the trial court's consideration of Foster's age alone was sufficient. Maj. Op. ¶ 21. The trial court's consideration of Foster's age, but not his life expectancy, is simply not sufficient under our caselaw.

¶49. While it is certainly advisable that a defendant put some evidence of his life expectancy before the trial court,[12] it is ultimately the judge's responsibility to consider the

_____

[12]Neither side offered any evidence as to Foster's life expectancy at the trial court level; however, the trial court found "no need to order a presentence investigation," and

defendant's age and life expectancy and any other pertinent factors before sentencing him under Section 97-3-79. The trial court cannot hope to ensure a sentence *reasonably* less than life without considering how long "life" for that defendant is. I do not imply that a judge should have to conduct an extensive search for evidence with which to examine sentencing factors. It is incumbent upon *both* parties to put on evidence so that the judge may make findings of fact. Where neither party does so, it is incumbent upon the judge to insist that a proper record be made and actually make findings of fact, something that did not occur here regarding life expectancy. I believe that this Court has become lax in enforcing appropriate standards for sentencing hearings, and that we have not demanded excellence from all parties below. The time has come to reverse course and demand that an appropriate sentencing record be made in all cases. The State, the defense, and the trial court should ensure that a record is made regarding all factors necessary to a sentencing decision, and the trial court should make appropriate findings of fact.

¶50. Trial courts must examine the evidence to determine a reasonable, educated estimate as to a defendant's life expectancy. Moreover, a trial court *must* do so to follow the Legislature's dictates that the sentence be less than life. The trial court in this case did absolutely nothing to estimate Foster's life-expectancy– it failed to consult actuarial tables, evidence of Foster's health, or anything else at all as relates to Foster's life expectancy, a factor that it is required to consider in determining an armed robbery sentence.

---

proceeded with sentencing mere minutes after the jury returned its verdict.

¶51.    After its complete failure to consider Foster's life expectancy, the trial court sentenced

Foster to forty years in prison.[13]  On appeal, Foster presents actuarial tables that indicate that

forty years exceeds Foster's life expectancy.  Courts may take judicial notice of mortality or

actuarial tables.  **Henderson v. State**, 402 So. 2d 325, 328 (Miss. 1981); **Churchill v. Pearl**

**River Basin Dev. Dist.**, 757 So. 2d 940, 945 (Miss. 1999).  According to actuarial tables,

Foster, thirty-five year old black male, has a life expectancy between 37.9 and 38.2 years.[14]

*National Vital Statistics Reports, Vol. 59, No. 9, September 28, 2011*, located at

http://www.cdc.gov/nchs/data/nvsr/nvsr59/nvsr59_09.pdf (last visited October 14, 2014).

"The purpose of referring to these tables is merely to invalidate those sentences that are of

such a duration that, given the age of the defendant, they are clearly the equivalent of a

---

[13]The Court of Appeals and the majority note that Foster's codefendant, Donald Wilson, was likewise sentenced to forty years in prison, and that sentence was affirmed. Wilson was thirty-one at the time of his sentencing, and the life-span of a thirty-one year old non-Hispanic black male is 41.5 years. *National Vital Statistics Reports, Vol. 59, No. 9, September 28, 2011*, located at http://www.cdc.gov/nchs/data/nvsr/nvsr59/nvsr59_09.pdf (last visited October 14, 2014).  Wilson's forty-year sentence was 1.5 years less than his life expectancy, and was thus ostensibly legal.  Moreover, Wilson's sentence is neither relevant to Foster's life expectancy, nor before this Court.  While certainly a trial court may consider the codefendant's sentence in its analysis, it is not the only factor to consider, and the trial court must *also* consider a defendant's life expectancy, something it failed to do in this case. Moreover, while the majority uses Wilson's sentence as a comparison, the record reveals that the trial court did not even consider it when sentencing Foster, which may only compound the trial court's errors in sentencing.

[14]A thirty-five-year-old non-Hispanic black male has a life expectancy of 37.9 years. A thirty-five-year-old black male, including the black Hispanic population, has a life expectancy of 38.2 years. *National Vital Statistics Reports, Vol. 59, No. 9, September 28, 2011*, located at http://www.cdc.gov/nchs/data/nvsr/nvsr59/nvsr59_09.pdf (last visited October 14, 2014).

sentence of life imprisonment." ***Martin***, 115 F.3d at 455. That is precisely what we should do here. To be sure, I would in no way mandate that a trial court use life expectancy tables to set a sentence reasonably expected to be less than life. But in the absence of any other evidence whatsoever – indeed, with the complete failure of the trial court to even consider Foster's life expectancy – we may and should take judicial notice of life expectancy tables and invalidate a sentence, such as Foster's, that is the equivalent of life imprisonment when a life sentence is forbidden.

¶52.    Life expectancy, or actuarial, tables are commonly used in courts in sentencing. *See, e.g.*, ***People v. Taylor***, 878 N.E.2d 969, 997 n.6 (N.Y. 2007) ("Life expectancy tables . . . are so commonly used in the courts that they are included in the Pattern Jury Instructions."); N.D. Sup. Ct. Admin. R. 51 ("In determining the sentence imposed upon [certain offenders] . . . the trial court shall compute the remaining life expectancy of the offender by reference to *Table A* (Expectation of life by age, race, and sex) of" the CDC reports.); ***State v. Ragland***, 836 N.W.2d 107, 119 (Iowa 2013) (using "standard mortality tables" to determine life expectancy); ***State v. Ross***, 861 P.2d 473, 484 (Wash. App. Div. 2 1993) (under the sentencing scheme, "all sentences except life in prison without the possibility of parole must be determinate. Thus, the only way to impose a life sentence for the myriad crimes for which life is the maximum penalty is to determine what the defendant's life expectancy is likely to be. . . . As [life expectancy tables] have long been accepted by the courts for [awarding damages], we can see no reason why they should not be viewed as a reliable basis for determining how long a life sentence in a criminal case should be."); ***United States v.***

33

*Ferranti*, 928 F. Supp. 206, 216 (E.D.N.Y. 1996) (using life-expectancy table to avoid sentencing defendant to "a life sentence in fact"). The majority cites *Johnson v. State* in support of its proposition that life-expectancy charts are of "limited utility," a dicta statement by the Court in *Johnson*. *Johnson v. State*, 29 So. 3d 738, 744-45 (Miss. 2009). As seems a pattern with the majority, *Johnson* is completely inapplicable to the case at hand. Johnson, a habitual offender convicted on *three* counts of armed robbery, cited an actuarial life expectancy of 41.7 years, and then claimed that his forty-one year sentence was "effectively" a life sentence, despite it being *less* than his actuarial life expectancy. *Id.* at 744.

¶53. The Court of Appeals determined that Foster's sentence was not illegal because it did not exceed the life expectancy for a thirty-five-year-old "American citizen," without reference to age or gender. This Court and the Court of Appeals have traditionally used individual characteristics such as age, gender, and race, as well as other appropriate particularized considerations such as health and height, when considering life expectancy. *See Arrington v. State*, 411 So. 2d 779, 780 (Miss. 1982) (using the life expectancy of the average seventeen-year-old black male); *Henderson*, 402 So. 2d at 329 (using the life expectancy of the average twenty-two-year-old black male) ("While the mortality tables are used only as guides in determining life expectancy, those tables along with the absence in the record of any physical impairment or illness of the appellant, must have convinced the trial judge" that the sentence was reasonably expected to be less than life.); *Trammell v. State*, 62 So. 3d 424, 433 (using life expectancy for a person of the defendant's "age, sex, and

race"). Taking into account particular circumstances when determining life expectancy is both appropriate and preferable because large variations may occur among the life expectancies of different populations.[15] Indeed, using the life expectancy of the "average American" disproportionately harms both males and African Americans.[16]

¶54. The majority relies on cases that have no bearing on the case at hand to claim that this Court has upheld sentences that "amount to" life sentences. In *Lindsay*, this Court noted that Lindsay failed to present any evidence of life expectancy at *any* stage, not just at sentencing, as claimed by the majority. Maj. Op. ¶ 18; *Lindsay v. State*, 720 So. 2d 182, 186 (Miss.

---

[15] This is especially true when consulting an objective, reliable source for life expectancy, such as a government actuarial table, because it reduces the chance a court will arbitrarily fix an illegal sentence.

[16]As an example, in Foster's age bracket of thirty-five to thirty-six years, if the average American's life expectancy of 44.6 years was used, white females, Hispanic females, and Hispanic males would experience a boon, often of several years. *National Vital Statistics Reports, Vol. 9, No. 9, September 28, 2011*, located at http://www.cdc.gov/nchs/data/nvsr/nvsr59/nvsr59_09.pdf (last visited October 14, 2014) (Thirty-five-year-old non-Hispanic white females have a 46.8 year life expectancy; thirty-five-year-old Hispanic females have a 49.4 year life expectancy; and thirty-five-year-old Hispanic males have a 45.1 year life expectancy). Meanwhile, non-Hispanic white males and all non-Hispanic African Americans would be disparately impacted, often by several years. *National Vital Statistics Reports, Vol. 9, No. 9, September 28, 2011*, located at http://www.cdc.gov/nchs/data/nvsr/nvsr59/nvsr59_09.pdf (last visited October 14, 2014) (Thirty-five-year-old non-Hispanic white males have a life expectancy of 42.7 years; thirty-five-year-old non-Hispanic black males have a life expectancy of 37.9 years; and thirty-five year old non-Hispanic black females have a life expectancy of 43.5 years). In addition, using such non-particularized, hugely sweeping averages such as the "average American" is likely to disproportionately harm Mississippians. *See Death in the United States, 2010, NCHS Data Brief No. 99, July 2012*, located at http://www.cdc.gov/nchs/data/databriefs/db99.pdf (last visited October 14, 2014) ("Mississippi had the highest age-adjusted death rate in 2010 (961.9), 28.9 percent higher than the U.S. rate.").

1998) ("Lindsay cannot argue his sentence is in effect a life sentence when he offers only opinion as to what that life expectancy will be.").  In fact, *Lindsay* was a case on a motion for post-conviction release, in which Lindsay was expected to present evidence that was not before the trial court.  Foster does not fail to present evidence other than opinion.  Rather, he presents us with life expectancy tables.  Moreover, this Court also stated that "[t]his Court in several cases, has upheld sentences that *neared* what could be considered life sentences while taking into account the defendant's life expectancy."  *Id.*  Foster's sentence does not near his life expectancy; it exceeds it.

¶55.   The majority then cites several cases that are completely inapposite, as they involve a *proportionality* review, and have nothing whatsoever to do with a sentence that is *statutorily limited* to being less than life.  Indeed, the majority cites *Cannon v. State* for its position that a sentence may exceed the life expectancy of a defendant, despite this Court specifically distinguishing the case from the line of cases under the armed robbery statute. *Cannon v. State*, 919 So. 2d 913 (Miss. 2005).  *Cannon* interpreted a statutory scheme that provided that the maximum sentence was a term of years, *not* a term reasonably less than life, as the armed robbery statute provides.  *Id.*  The majority tellingly omits the portion of *Cannon* which *specifically* distinguishes it from *Stewart* and holds the armed robbery line of cases to be inapplicable to cases in which the maximum sentence is a term of years:

> We find that the inherent problem with reliance upon *Handford* is that its holding is based upon *Stewart,* an armed robbery case. The crime of armed robbery has specific sentencing requirements separate and distinct from drug cases. The armed robbery statute, Miss. Code Ann. § 97-3-79 (Rev. 2000), provides:

36

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury guilty of robbery and, upon conviction, **shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.**
>
> (emphasis added). Therefore, a jury may impose a penalty of life imprisonment for the crime of armed robbery pursuant to the statute. If a jury does not fix a sentence of life imprisonment, then a trial judge may determine a sentence within certain limits. This Court has held that a trial judge's sentencing in armed robbery cases is limited to a definite term reasonably expected to be less than life. *Stewart v. State,* 372 So. 2d 257, 259 (Miss.1979); *see also Lindsay v. State,* 720 So. 2d 182, 185 (Miss.1998). However, this rule does not apply in a drug case such as the one before the Court today.

*Cannon v. State*, 919 So. 2d at 915-16. *See also Tate v. State*, 912 So. 2d 919 (Miss. 2005) (examining a sentence for proportionality under the Eighth Amendment, under a statutory scheme with a maximum of a term of years); *Mosely v. State*, 104 So. 3d 839 (Miss. 2012) (examining a sentence for proportionality under the Eighth Amendment, under a statutory scheme with a maximum of a term of years); *Williams v. State*, 794 So. 2d 181 (Miss. 2001) (examining a sentence for proportionality under the Eighth Amendment, under a statutory scheme with a maximum of a term of years), *overruled by Brown v. State*, 994 So. 2d 698 (Miss. 2008). In this case, we examine the rather unique circumstance of a statute in which the sentencing judge has been stripped by the Legislature of the authority to sentence a

37

defendant to life imprisonment. Cases examining the proportionality of a sentence under a sentencing statute with no such limitation are completely inapposite.

¶56.    Not only did the trial court fail to consider and make a record of life expectancy when fixing Foster's sentence, but Foster presented us with objective, reliable evidence that his sentence is illegal, as it is not reasonably expected to be less than life. Foster's illegal sentence violates his fundamental rights and thus amounts to plain error. I would therefore affirm Foster's conviction and vacate his sentence for armed robbery.

¶57.    I also respectfully disagree with the Special Concurrence in its determination that the notion that the Court created the standard that a judicially imposed sentence pursuant to the armed robbery statute be less than the life expectancy of the defendant. This Court is vested with the power to interpret the law. If every statute were plain and unambiguous and could be read literally, we would not have much need for the courts. The duty of this Court "is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case. Whether the Legislature intended that interpretation, we can only hope, but we will never know." ***Pope v. Brock***, 912 So. 2d 935, 936 (Miss. 2005). When a statute is ambiguous, this Court must interpret it. "Interpreting using the rule of statutory construction simply means we look for clues in certain time-honored rules as well as other places in order to apply the most reasonable interpretation of the statute's language and intent." ***Id.*** The Special Concurrence would essentially eliminate this Court's power to interpret vague or ambiguous statutes, limiting the Court to only the literal words of a statute, even when they are vague or ambiguous.

38

¶58. The armed robbery statute provides that a defendant, once convicted, "shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years." Miss. Code Ann. § 97-3-79 (Rev. 2014). Therefore, the Legislature determined that *only* the jury may fix a life sentence.

¶59. In such cases in which the court fixes the sentence, the court may not sentence the defendant to a life term, but must sentence the defendant to a term reasonably expected to be less than life. *Stewart v. State*, 372 So. 2d 257, 258 (Miss. 1979). *Stewart* was decided on the heels of two contradicting cases, *Lee v. State* and *McAdory v. State*. *Lee v. State*, 322 So. 2d 751 (Miss. 1975); *McAdory v. State*, 354 So. 2d 263 (Miss. 1978), *overruled by Stewart*, 372 So. 2d at 259. In *Lee*, the Court examined the forcible rape statute, which provided that the defendant

> upon conviction shall be imprisoned for life in the state penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty in the state penitentiary for any term as the court, in its discretion, may determine.

*Lee*, 322 So. 2d at 753 (quoting Miss. Code Ann. § 97-3-65 (Supp. 1974)). The Court found that under Section 97-3-65, a trial judge may not impose a sentence of life when the jury has failed to do so. *Lee*, 322 So. 2d at 753. It held that

> The statute before us places the imposition of a life sentence within the sole province of the jury and, in our opinion, no such sentence can be imposed by a judge unless he has the authority from the jury so to do. The statute presupposes, absent a jury recommendation of life imprisonment, that the

judge will sentence the defendant to a definite term reasonably expected to be less than life.

*Id. McAdory*, on the other hand, examined the armed robbery statute and found that "[i]n the event the jury failed to impose sentence, as was done in this case, the lower court had the discretion under the statute to impose a life sentence." *McAdory*, 354 So. 2d at 266.

¶60.     *Stewart* noted the conflicting decisions on the question of whether a sentence exceeding the defendant's life expectancy under the armed robbery statute is excessive as being for a longer time period than permitted by statute. *Stewart*, 372 So. 2d at 258. After examining the rationale behind both *Lee* and *McAdory*, a unanimous Court found that *Lee* "announce[d] a sounder rule" and thus overruled *McAdory*. *Id.* at 259. The Special Concurrence advocates overruling *Stewart* and substituting a new interpretation of Section 97-3-79. It argues that the statute means merely that the trial court must sentence a defendant to "any sentence greater than three years," opining that even a sentence of one hundred years does not violate the statute. Sp. Concur. ¶31. The Special Concurrence's view, however, determines that the statute in question has no limits. Under the Special Concurrence's view, a trial court judge could sentence an offender to three hundred years,[17] and it would be a

---

[17]Where is the line drawn? One hundred years? Three hundred? Five hundred? This argument creates a slippery slope and gives trial courts no upper sentencing limit, because this Court has held that "a sentence which does not exceed statutory limits is not cruel or unusual punishment." *Baker v. State*, 394 So. 2d 1376, 1378 (Miss. 1981). Since the Special Concurrence argues the statute in question has no limit, it follows that any term of years is acceptable; yet, the Legislature clearly intended for non-jury sentences under Section 97-3-79 to have an upper limit. In a concurrence by Judge Posner, he notes that the effects of such a position "would be to empower the judge to make a term of years a heavier sentence than life imprisonment." *United States v. Prevatte*, 66 F.3d 840, 846 (7th Cir.

statutorily acceptable sentence. Such an interpretation renders the Legislature's specific determination that only a jury may sentence an offender to life completely meaningless. Thus, in my view, the Special Concurrence suggests usurping legislative authority and replacing the Legislature's sound and clear judgment as to the limit on sentences with its own judgment that sentences under Section 97-3-79 may be *any* term of years whatsoever. Not only does this contravene the statute itself, it contravenes the notion that "criminal statutes must be strictly construed in favor of the accused." *Lewis v. State*, 765 So. 2d 493, 499 (Miss. 2000). As the Seventh Circuit notes, "where a legislatively enacted sentencing scheme has expressly deprived a court of the possibility of imposing a life sentence, a sentence for a term of years exceeding the defendant's approximate life expectancy would ordinarily constitute an abuse of discretion." *United States v. Martin*, 115 F.3d 454, 455 (7th Cir. 1997) (internal quotations omitted); *United States v. Prevatte*, 66 F.3d 840, 843 (7th Cir. 1995); *see also United States v. Gullett*, 75 F.3d 941, 950 (4th Cir. 1996) (the absence of a jury recommendation for a life sentence "disempowered the sentencing judge to choose between a life term and a term of years, so if he used a term of years to impose a life sentence he was evading a limitation on his authority" (quoting *Prevatte*, 66 F.3d at 847 (Posner, J., concurring))). Thus, *Stewart* was clearly correctly decided and we rightly continue to follow

---

1995) (Posner, J., concurring) (citing Seventh, Sixth, and First Circuit cases that stand for the same proposition). "[A] judge could . . . use a sentence to a term of years to imprison a defendant for his natural life, thus circumventing the requirement . . . of a jury recommendation for a life sentence." *Id.* If the judge "used a term of years to impose a life sentence he was evading a limitation on his authority." *Id.* at 847.

its mandate that when a court, rather than a jury, fixes the sentence of a defendant under the armed robbery statute, the sentence must be "a definite term reasonably expected to be less than life." *Stewart*, 372 So. 2d at 259. To hold otherwise would allow the sentencing judge to evade the legislatively imposed limit on his authority.

¶61. However, even assuming the Court's interpretation in *Stewart* of Section 97-3-79 was incorrect, I disagree with the Special Concurrence's position that this Court should overrule the Court's unanimous decision in *Stewart*, a decision that has stood for thirty-five years. The doctrine of *stare decisis* "proceeds from that first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike." *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 634 (Miss. 1991). It stands for the proposition "that long established legal interpretations ought not lightly be disturbed." *Id.*

> The doctrine of *stare decisis* is the bedrock of our system of jurisprudence. It has given direction and stability to the common law whose precepts constitute the larger part of the rules by which we live and are governed. It demands definiteness in the law, and that its rules be consistent so that they may be known. It has been said to be the most fundamental characteristic of the common law as distinguished from other systems.

*Id.* (quoting *Laurel Daily Leader, Inc. v. James*, 80 So. 2d 770, 780-81 (Miss. 1955) (Gillespie, J., Special Opinion)). Because of the importance of s*tare decisis*, overturning settled caselaw requires more than a mere academic or historical demonstration of error. *Molpus*, 578 So. 2d at 635. In finding error, this Court must "look largely in the area of public or widespread disadvantage[,]" and will not overrule longstanding "precedent unless it is 'pernicious,' 'impracticable,' or is 'mischievous in its effect, and resulting in detriment

42

to the public.'" ***Id.*** (internal citations omitted).  Thus, when a holding has produced "great

and substantial harm," i.e., "over time the precedent has repeatedly had a substantial adverse

or significantly harmful effect upon the people," overruling that precedent may be

appropriate.  ***Id.***  In this case, the State has not described any instances in which the ***Stewart***

holding caused any harm whatsoever, much less great and substantial harm.

¶62.    Furthermore, a weighty factor in a challenge to precedent is whether people have

"justifiably placed their faith" in the prior precedent, and the fact that there exists a "the need

to have [the] law settled so that [the people] may rely upon it."  ***Id.*** at 637.  "[P]ublic

confidence in the law requires substantial stability in the face of" changes with the times and

judicial personnel.[18]  ***Id.*** at 638.  "Popular and professional confidence in the judiciary rests

---

[18]On December 8, 1975, a Court composed of Justices Gillespie, Patterson, Rodgers, Inzer, Smith, Robertson, Sugg, Walker, and Broom unanimously decided that the proper interpretation of the rape statute, which provided that if a jury did not provide a life sentence, the court could fix the sentence for any term, was that only a jury may sentence a defendant to life, and in the absence of such a sentence, a judge has only the authority to sentence a defendant "to a definite term reasonably expected to be less than life."  ***Lee***, 322 So. 2d at 753.

On January 25, 1978, a Court composed of Justices Patterson, Inzer, Smith, Robertson, Sugg, Walker, Broom, Bowling, and Lee unanimously decided that the proper interpretation of the armed robbery statute, which provided that if a jury did not provide a life sentence, the court could fix the sentence for any term not less than three years, was that the court had the discretion to impose a life sentence even when the jury does not do so. ***McAdory***, 354 So. 2d at 266.

On May 2, 1979, a Court composed of Justices Patterson, Smith, Robertson, Sugg, Walker, Broom, Bowling, Lee, and Cofer unanimously decided that the proper interpretation of the armed robbery statute was that only a jury can sentence a defendant to life, and that, absent such a jury sentence, a judge has only the authority to sentence a defendant to a "definite term reasonably expected to be less than life," overruling ***McAdory***.  ***Stewart***, 372 So. 2d at 259.

Today, a Court composed of Justices Waller, Dickinson, Randolph, Lamar, Kitchens,

43

on the impersonality of decisions and their reasoned foundation, which in turn are built upon

the respect accorded them by successor justices and by their staying power." *Id.* "Principled

consistency and respect for precedent promote acceptance. They reflect a consensus about

law. They contribute to the notion that law binds judges as well as litigants, and not just

when we agree. Good judges know this and will change legal interpretations only for the

most persuasive reasons." *Id.* at 638-39.

¶63. Moreover, since the decision in *Lee*, the Legislature has amended Section 97-3-65 five

times. Laws 1977, Ch. 458, §7; Laws 1985, Ch. 389, §3; Laws 1993, Ch. 497, §1; Laws

1998, Ch. 549, §2; Laws 2007, Ch. 335, §1. None of the five amendments that have occurred

in the thirty-nine years since *Lee* was decided has changed the sentence for forcible rape.

When this Court finds that a statute was incorrectly interpreted in a previous case, it

> will nevertheless continue to apply the previous interpretation, pursuant to the
> doctrine of *stare decisis*, upon finding the Legislature amended or reenacted
> the statute without correcting the prior interpretation. In our view, such action
> on the part of the Legislature amounts to incorporation of our previous
> interpretation into the reenacted or amended statute. The Legislature is, of
> course, free to preclude our incorrect interpretation by specific provision,
> failing which, we must conclude that the legislative silence amounts to
> acquiescence. Stated another way, the incorrect interpretation becomes a

---

Chandler, Pierce, King, and Coleman should not overrule *Stewart* and find that the proper
interpretation of the armed robbery statute is that a judge has the authority to sentence a
defendant to a term of years reasonably expected to be longer than that defendant's life
expectancy, effectively sentencing the defendant to life. If we abandon *stare decisis* today,
nothing will stop the Court from again abandoning this new interpretation in a few years,
once the composition of the Court has changed, or the current composition has changed its
mind. This issue has already received much back and forth, and thus a thorough analysis of
all sides of the issue, before it was settled thirty-five years ago. Subjecting it to more back
and forth today, merely because of a change in the Court's composition, is not prudent.

44

correct interpretation because of the Legislature's tacit adoption of the prior interpretation into the amended or reenacted statute.

*Porter v. Porter*, 23 So. 3d 438, 448 (Miss. 2009) (quoting *Caves v. Yarbrough*, 991 So. 2d 142, 153-54 (Miss. 2008)). The Legislature has tacitly adopted the interpretation in *Lee* not once, not twice, but five times, thus incorporating the interpretation into the statute. The sentencing provision and reasoning in *Lee* are essentially identical to those in *Stewart*. Furthermore, the Legislature has had thirty-five years to amend the armed robbery statute if it believed that *Stewart* did not comport with its intent. It has declined to do so.

> It would be a great evil if questions once settled on full argument and mature deliberation were subject to be reopened and decided differently upon every change in the members of this court, and consequent changes in the temper and mental organism of the judges. . . . It is safe . . . to say that the rule of *stare decisis*, so far as it relates to decisions of this court, should not be disregarded, except on the fullest conviction that the law has been settled wrong; and even then it is better to leave the correction to the legislature in all cases where a departure from it would have the effect to disturb vested rights . . . . In such cases, a departure from former rulings should never take place except upon the clearest necessity and the most assured conviction that the former ruling was erroneous.

*Lombard v. Lombard*, 57 Miss. 171 (1879).

¶64. Even if *Stewart* was wrongly decided, which it was not, any alleged error was certainly not pernicious, impracticable, or mischievous in its effect. Nor has any alleged error cause any harm or detriment to the public, much less any significant harm. Furthermore, the bench, bar, and defendants have come to rely on the interpretation of Section 97-3-79 as provided by *Stewart*. Last, the legislative silence for several decades on this issue renders the *Stewart* and *Lee* interpretations tacitly adopted, and thus incorporated

45

into the statute. For these reasons, *Stewart* should not be disturbed even upon a finding of error in its interpretation of Section 97-3-79.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART.**